1  ROBERT W. FERGUSON
   Attorney General
2  MITCHELL A. RIESE
   NEAL LUNA
3  Assistant Attorneys General
   Attorney General of Washington
4  Civil Rights Division
   800 Fifth Avenue, Suite 2000
5  Seattle, WA 98104
   (206) 464-7744

6

7

8

9             **UNITED STATES DISTRICT COURT**
           **EASTERN DISTRICT OF WASHINGTON**
10

11  STATE OF WASHINGTON,

           Plaintiff,                    NO. 1:20-CV-3018-RMP
12
         v.
13                                       PLAINTIFF STATE OF
   CITY OF SUNNYSIDE; AL                 WASHINGTON'S
14 ESCALERA, in his official and         RESPONSE TO
   individual capacities; MELISSA        DEFENDANTS' MOTION
15 RIVAS, in her official and            TO DISMISS
   individual capacities;
16 CHRISTOPHER SPARKS, in his            MAY 11, 2019
   official and individual capacities;   WITH ORAL ARGUMENT:
17 JOEY GLOSSEN, in his official         1:30 P.M.
   and individual capacities; and        Ph: 1-888-363-4749
18 JAMES RIVARD, in his official         ACCESS CODE: 6699898#
   and individual capacities
19
           Defendants.
20

21

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

1

# TABLE OF CONTENTS

2  I.    INTRODUCTION ..................................................................................... 1

3  II.   FACTUAL AND PROCEDURAL BACKGROUND ....................... 2

4  III.  ARGUMENT ........................................................................................... 2

5        A.  Motion to Dismiss Standard ........................................................... 2

6        B.  The Allegations of the Complaint Establish Washington's
             *Parens Patriae* Standing ................................................................. 3
7
        C.  Washington's Claims Are Timely .................................................. 11
8
        D.  Washington's Allegations Establish Municipal Liability
9            Against Sunnyside ......................................................................... 13

10       E.  Washington Has Alleged Facts Establishing a Prima
             Facie Case of Housing Discrimination Under Federal
11           and State Law ................................................................................. 15

12       F.  Washington May Enforce the Residential Landlord
             Tenant Act ...................................................................................... 18
13
        G.  Washington Does Not Seek Damages for Violations of the
14           Washington Constitution ............................................................... 19

15       H.  Remand to State Court is the Only Possible Remedy if
             This Court Lacks Subject Matter Jurisdiction ............................. 19
16
   IV.   CONCLUSION ..................................................................................... 20

17

18

19

20

21

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1
2

# TABLE OF AUTHORITIES
## Cases

3

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
   458 U.S. 592 (1982) ...................................................................................4, 10

4

5

*ASARCO Inc. v. Kadish,*
   490 U.S. 605 (1989) ........................................................................................20

6

*Ave. 6E Invs., LLC v. City of Yuma,*
   818 F.3d 493 (9th Cir. 2016) ..........................................................................17

7

8

*Bank of America Corp. v. City of Miami,*
   137 S. Ct. 1296 (2017) .................................................................................3, 17

9

*Bruns v. Nat'l Credit Union Admin.,*
   122 F.3d 1251 (9th Cir. 1997).........................................................................20

10

11

*City of Oklahoma City v. Tuttle,*
   471 U.S. 808 (1985) ........................................................................................13

12

*City of Seattle v. McKenna,*
   259 P.3d 1087 (2011) ......................................................................................18

13

14

*Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props, LLC,*
   No. C16-922 TSZ, 2017 WL 2022462 (W.D. Wash. May 12, 2017) ...........16

15

*Garrett v. City of Escondido,*
   465 F. Supp. 2d 1043 (S.D. Cal. 2006) ..........................................................13

16

17

*Gutowsky v. County of Placer,*
   108 F.3d 256 (9th Cir. 1997)...........................................................................12

18

*Kumar v. Gate Gourmet, Inc.,*
   325 P.3d 193 (Wash. 2014).............................................................................16

19

20

*Massachusetts v. Bull HN Info. Sys., Inc.,*
   16 F. Supp. 2d 90 (D. Mass. 1998) ...................................................................6

21

*Missouri ex rel. Hawley v. Becerra,*
   137 S. Ct. 2188 (2017) ......................................................................................4

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

ii

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017)....................................................................4, 7, 10

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010)..............................................................................3

*New York v. 11 Cornwell Co.*,
  695 F.2d 34 (2d Cir. 1982).......................................................................3, 5, 10

*New York v. Mid Hudson Med. Grp., P.C.*,
  877 F. Supp. 143 (S.D.N.Y. 1995)........................................................................7, 10

*New York v. Peter & John's Pump House, Inc.*,
  914 F. Supp. 809 (N.D.N.Y. 1996) .......................................................................6, 10

*Oregon ex rel. Dep't of Transp. v. Heavy Vehicle Elec. License Plate, Inc.*,
  157 F. Supp. 2d 1158 (D. Or. 2001) ...................................................................3

*Oviatt v. Pearce*,
  954 F.2d 1470 (9th Cir. 1992).............................................................................13

*Pennsylvania v. Porter*,
  659 F.2d 306 (3d Cir. 1981)................................................................................3, 5, 9

*Pfaff v. U.S. Dep't of Hous. & Urban Dev.*,
  88 F.3d 739 (9th Cir. 1996).................................................................................16

*Polo v. Innoventions Int'l, LLC*,
  833 F.3d 1193 (9th Cir. 2016)............................................................................20

*Reeder v. King County*,
  358 P.2d 810 (Wash. 1961).................................................................................19

*Support Ministries For Persons With AIDS, Inc. v. Village of Waterford.*,
  799 F. Supp. 272 (N.D.N.Y. 1992) ....................................................................6, 10

*Tafoya v. State Human Rights Comm'n*,
  311 P.3d 70 (Wash. Ct. App. 2013) ...................................................................16

*Texas Dep't. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  135 S. Ct. 2507 (2015) .......................................................................................15, 16

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

iii

*Victor Valley Family Res. Ctr. v. City of Hesperia*,
  No. ED-CV-16-00903-AB, 2016 WL 3647340
  (C.D. Cal. July 1, 2016) ...................................................................12, 13, 14

*Wallace v. Kato*,
  549 U.S. 384 (2007) ............................................................................12

*Washington v. LG Elecs., Inc.*,
  375 P.3d 636 (2016) ............................................................................11

*Washington v. Schwab*,
  693 P.2d 108 (Wash. 1985)..................................................................18

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
  135 F.3d 658 (9th Cir. 1998)..................................................................2

Statutes

28 U.S.C. § 1447(c) ...............................................................................20

42 U.S.C. § 3604(a) ..........................................................................15, 17

42 U.S.C. § 3604(a)-(b) .........................................................................15

Wash. Rev. Code § 4.16.080 ..................................................................12

Wash. Rev. Code § 4.16.160 ..................................................................11

Wash. Rev. Code § 7.24.010 ..................................................................19

Wash. Rev. Code § 7.24.190 ..................................................................19

Wash. Rev. Code § 43.10.030(1)............................................................18

Wash. Rev. Code § 49.60.030(1)............................................................15

Wash. Rev. Code § 49.60.222 ................................................................15

Wash. Rev. Code § 49.60.222(1)(f) ...................................................15, 17

Wash. Rev. Code § 59.18.020 ................................................................18

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1

<u>Other Authorities</u>

2

*Demographics of Puerto Rico*, Wikipedia.org,
    https://en.wikipedia.org/wiki/Demographics_of_Puerto_Rico
3    (last visited Mar. 26, 2020) ..................................................................................4

4

U.S. Dep't of Commerce, Bureau of the Census, *1980 Census of*
    *Population*, Table 14, 34-15 (1980), https://www2.census.gov/prod2/
5    decennial/documents/1980/1980censusofpopu80134unse_bw.pdf ................5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# I.    INTRODUCTION

The State of Washington (Washington) alleges the City of Sunnyside and its law enforcement officers committed egregious civil rights violations by adopting a policy or practice of expelling Sunnyside residents from their homes without any due process whatsoever. Rather than explain or defend the merits of its official practice, Sunnyside seeks to avoid accountability in this Court or any other.

In a prior matter, this Court granted without prejudice Defendants' motion to dismiss, reasoning that Washington lacked the *parens patriae* standing necessary to proceed in federal court. *Washington v. City of Sunnyside*, No. 1:19-CV-3174-RMP (W.D. Wash. Dec. 6, 2019) (*Sunnyside I*), ECF No. 16. Washington amended its allegations and re-filed in state court. Complaint (Compl.) ECF No. 1-1. Defendants nevertheless removed this matter back to federal court, and now seek to dismiss on identical grounds. But as alleged in the Complaint, Defendants' actions have had severe effects on those Sunnyside residents directly affected, and wide-ranging effects on Washingtonians indirectly affected. Compl. ¶¶ 2.2, 5.20–5.38, 5.43–5.44. The Complaint alleges sufficient facts to establish Washington's *parens patriae* standing under longstanding civil rights case law, which Defendants' motion does not even mention, let alone attempt to distinguish. The Complaint also states seven valid claims for relief, none of which is barred by any statute of limitations. The Court should deny Sunnyside's motion to dismiss. Alternatively, if the Court

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    determines Washington still lacks standing, the Court should remand this matter

2    to state court.

3              II.       **FACTUAL AND PROCEDURAL BACKGROUND**

4              This lawsuit was filed in Yakima County Superior Court on February 5,

5    2020. Defendants removed the case to this Court the next day. ECF No. 1.

6              In the current matter (*Sunnyside II*), Washington continues to allege that

7    Sunnyside adopted and enforces a program of extra-judicial evictions carried out

8    by police officers and other city employees. Compl. ¶¶ 5.20–5.32. The basic

9    structure of Sunnyside's Crime Free Rental Housing Program (CFRHP) remains

10   unchanged from the version Washington challenged in *Sunnyside I*.

11   Compl. ¶¶ 5.1-5.13; *see also Sunnyside I*, ECF No. 10 at 1-2 (describing

12   operation of CFRHP); *Id.*, ECF No. 16 at 2-6 (same). Washington alleges that

13   Sunnyside's use of unlawful evictions has been the City's official policy for

14   years, has affected numerous residents, is ongoing now, and constitutes a

15   continuing violation. *Id.* ¶ 5.30.

16             III.      **ARGUMENT**

17   A.    **Motion to Dismiss Standard**

18             On a motion to dismiss, the Court must accept all well-pled allegations of

19   material fact as true, and draw all reasonable inferences in favor of Washington.

20   *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661

21   (9th Cir. 1998). The issue for the Court is "only whether the complaint states a

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    claim upon which relief can be granted," and not whether Washington will

2    ultimately prevail on the merits. *Mohamed v. Jeppesen Dataplan, Inc.*,

3    614 F.3d 1070, 1100 (9th Cir. 2010) (internal quotations omitted).

4

**B.    The Allegations of the Complaint Establish Washington's *Parens***

5    ***Patriae* Standing**

6        Washington has *parens patriae* standing to enforce both 42 U.S.C. § 1983

7    (§ 1983) and the federal Fair Housing Act (FHA). *See Pennsylvania v. Porter*,

8    659 F.2d 306, 315 (3d Cir. 1981) (en banc) (Pennsylvania Attorney General

9    properly brought police misconduct case under § 1983); *Oregon ex rel. Dep't of*

10   *Transp. v. Heavy Vehicle Elec. License Plate, Inc.*, 157 F. Supp. 2d 1158 (D. Or.

11   2001) (state has *parens patriae* authority to sue under § 1983); *Bank of America*

12   *Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017) (city has standing to bring

13   FHA discrimination claim because of detrimental impacts to the city as a result

14   of defendant's predatory lending practices); *New York v. 11 Cornwell Co.*,

15   695 F.2d 34, 38-40 (2d Cir. 1982) (New York attorney general has *parens patriae*

16   standing to bring 42 U.S.C. § 1985(3) claim against property owners for disability

17   discrimination in housing).

18       A state has *parens patriae* standing where the consequences of the

19   defendants' actions—if left unchecked—indirectly injure the health and well-

20   being or the federal rights of residents beyond those directly harmed.

21   *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

3

1    (1982). Thus, to determine whether a state has *parens patriae* standing, a court

2    "must" consider not only the direct effects of the defendant's actions, but also

3    whether the defendant's actions, if allowed to continue, would *indirectly* injure

4    additional state residents. *Id.*; *Missouri ex rel. Koster v. Harris*, 847 F.3d 646,

5    651 (9th Cir. 2017), *cert. denied sub nom. Missouri ex rel. Hawley v. Becerra*,

6    137 S. Ct. 2188 (2017).

7         *Snapp* and its progeny emphasize that *parens patriae* standing exists even

8    where the number of residents directly affected by the defendants' conduct is

9    relatively small, but where allowing the conduct to continue would indirectly

10   impact more. In *Snapp*, Puerto Rico sued as *parens patriae* to protect Puerto

11   Rican workers from discrimination during one harvest season in Virginia's apple

12   industry. *Snapp*, 458 U.S. at 592. The Supreme Court expressly disagreed with

13   the district court's "narrow view" that Puerto Rico lacked *parens patriae* standing

14   because the number of Puerto Ricans directly affected was small compared to

15   Puerto Rico's overall population.[1] *Snapp*, 458 U.S. at 609. The Supreme Court

16   observed that discrimination against some Puerto Ricans is a harm that creates a

17   "universal sting" for all Puerto Ricans and impacts many more than the discreet

18   group of individuals who directly experienced discrimination during the 1978

19   apple harvest. *Id.* at 597, 609.

20   ───────────────

21        [1] Just 0.026% of the population (i.e., 787 of approximately 3,000,000 at

22   the time (https://en.wikipedia.org/wiki/Demographics_of_Puerto_Rico)).

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

4

1    Subsequent civil rights cases emphasize and reinforce the *Snapp*

2  precedent, which is contrary to this Court's previous suggestion that *parens*

3  *patriae* standing requires direct injuries "across municipalities" or of "statewide

4  magnitude." *Cf. Sunnyside I*, ECF No. 16 at 11. Thus, Pennsylvania had standing

5  to sue a municipality to remedy the alleged misconduct of a single police officer

6  over a four-year period. *Porter*, 659 F.2d at 310. New York had *parens patriae*

7  standing to sue a neighborhood group trying to prevent the establishment of a

8  home for just eight to ten mentally disabled persons in Rockville Centre, a town

9  with 25,412 residents at the time.[2] *11 Cornwell*, 695 F.2d at 39-40. Despite the

10  small proportion of total New York residents directly impacted, the court

11  recognized *parens patriae* standing because allowing the defendant's

12  discriminatory conduct to continue indefinitely would "deprive any number of

13  [mentally disabled] persons of the opportunity to receive rehabilitation." *Id.* at

14  39. Further, the Court observed that "defendants' conduct also require[d] the

15  State to bear the cost of keeping more people in institutions" and deprived "both

16  [mentally disabled] persons and community residents of being able to live in

17  integrated communities." *11 Cornwell*, 695 F.2d at 39-40 ("And, were this kind

18  of incident to be tolerated and left without redress, countless others would be

19  _____

20    [2] *Census of Population and Housing*, Table 14, p. 34-15 (1980),

21  https://www2.census.gov/prod2/decennial/documents/1980/1980censusofpopu8

22  0134unse_bw.pdf.

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   affected. The 'sting' here is almost as 'universal' as it was in *Snapp*.") (internal

2   citation omitted). Other courts likewise recognize *parens patriae* standing where

3   the number of directly affected individual is relatively small, but where the

4   potential effects extend more broadly. *See, e.g., Support Ministries For Persons*

5   *With AIDS, Inc. v. Village of Waterford.*, 799 F. Supp. 272, 277-78

6   (N.D.N.Y. 1992) (New York had *parens patriae* standing to challenge one

7   village's discriminatory conduct preventing establishment of a single home for

8   up to fifteen homeless persons with AIDS because the conduct

9   indirectly would affect all homeless persons with AIDS in the state);

10  *Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90, 100-01 (D. Mass.

11  1998) (Massachusetts had *parens patriae* standing in case alleging discrimination

12  against 50 older workers because of the "sting" felt by all older workers statewide

13  and because other employers could successfully discriminate if Massachusetts

14  were not allowed to challenge the defendant's conduct); *New York v. Peter &*

15  *John's Pump House, Inc.*, 914 F. Supp. 809, 812-13 (N.D.N.Y. 1996) (New York

16  had *parens patriae* standing to sue a nightclub for racial discrimination where

17  allegations described experiences of just sixteen Black patrons, noting that the

18  number of persons directly impacted by the challenged conduct is not

19  determinative of *parens patriae* standing, recognizing the alleged incidents were

20  only examples of the defendants' conduct, and that discrimination

21  "has a destructive societal effect justifying *parens patriae* standing");

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

6

1    *New York v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 145-48 (S.D.N.Y.

2    1995) (*parens patriae* standing to sue a hospital *based on a single complaint* that

3    the hospital had refused to provide a sign language interpreter because such

4    conduct indirectly impacted all hearing-impaired persons in New York). Put

5    bluntly, few, if any, of these important civil rights cases could have been brought

6    if state standing required, as the Court previously suggested, direct injuries of a

7    "statewide magnitude." *Cf. Sunnyside I*, ECF No. 16 at 11.

8         Even *Koster*, a case on which Defendants previously relied, supports

9    Washington's standing. In *Koster*, a group of Midwestern states did not have

10   *parens patriae* standing to challenge California laws related to egg sales because

11   those laws had no impact—direct or indirect—beyond an "'identifiable group of

12   individual' egg farmers." *Koster*, 847 F.3d at 652 (citation omitted). The court

13   emphasized that the Plaintiff States' harms were purely speculative because the

14   California regulations had not yet gone into effect. *Id.* at 653. Even once they did,

15   Plaintiff States could not say whether its citizens would be harmed, and Plaintiff

16   States' farmers would be treated the same as California's own egg farmers. *Id.* at

17   653-55. In other words, there could be no allegation that California's egg laws

18   would harm Plaintiff States' residents or that Plaintiff States' egg farmers would

19   feel the universal sting of discrimination, because all egg farmers were being

20   treated equally. *Id.* Thus, *Koster* simply clarifies the application of the *parens*

21   *patriae* doctrine in the Ninth Circuit: a state has standing where it alleges direct

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   harm to an identified group of residents, *and* where it is reasonable to conclude

2   that allowing the challenged conduct to continue may have broader, indirect

3   effects on residents beyond those directly impacted.

4         Consistent with *Snapp* and its progeny, Washington has *parens patriae*

5   standing because it alleges that Defendants' unlawful evictions directly harm

6   Sunnyside residents *and* indirectly injure its residents beyond Sunnyside.

7   Defendants have unlawfully enforced the CFRHP against more than two-dozen

8   residents, making at least twenty people homeless, most for months, and

9   jeopardizing the housing of at least five more. Compl. ¶¶ 5.22-5.29. That is more

10  than the number directly affected in *11 Cornwell* (10-12), *Support Ministries* (up

11  to 15), *Pump House* (16), and *Mid Hudson* (1). Moreover, Washington has

12  alleged that these incidents are merely illustrative of Defendants' unlawful

13  conduct. Compl. ¶ 5.30. This allegation is reasonable in this pre-discovery phase,

14  given that Defendants have operated a CFRHP since 2010, yet all of the alleged

15  incidents described in the complaint occurred between July 2015 and July 2018.

16  Compl. ¶¶ 5.1, 5.22-5.29. These facts indicate that Washington likely will find

17  additional residents during discovery who were directly harmed, particularly

18  because the incidents Washington has uncovered to date involve the same

19  officers and a repeated pattern of conduct. *Id.* But even with the 25 directly

20  harmed residents Washington knows of now, Washington has *parens patriae*

21  standing under decades of civil rights cases applying the doctrine.

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1       What is more, beyond the direct impacts to specific Sunnyside residents,

2    Washington alleges the indirect effects of the unlawful evictions on other

3    Sunnyside renters and Washingtonians in other communities where a CFRHP is

4    in place. Sunnyside's CFRHP program is mandatory. Compl. ¶ 5.2. So, all of

5    Sunnyside's residents who rent homes now or in the future are subject to

6    Sunnyside's unlawful policy of enforcement of its CFRHP, which allows a single

7    police officer to evict families without any judicial order or process. In Sunnyside

8    and Washington in general, residents who live in rental housing are

9    disproportionately Latino/as, women, and families with children.

10   Compl. ¶¶ 5.34- 5.36. All of these tenants—especially Latino/as, women, and

11   young families—are in danger of being evicted from their homes at Defendants'

12   whim or from copycat officials in other cities with CFRHPs if Defendants'

13   unlawful evictions are allowed to continue. Compl. ¶ 5.43. Othello, a town near

14   Sunnyside with a CFRHP, has also unlawfully evicted tenants or wrongfully

15   issued CFRHP notices that have jeopardized people's homes. Compl. ¶ 5.44.

16   Indeed, if Sunnyside's practices receive court approval, police statewide may

17   conclude that the law permits extra-judicial evictions, even in cities that do not

18   have CFRHPs. Many evicted residents could become homeless, as did twenty

19   Washingtonians in the examples cited in the Complaint, which would put

20   additional strain on Washington's public resources. *See Porter*, 659 F.2d at 315

21

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1 | (finding standing where costs of civil rights violations are "ultimately . . . borne

2 | by the Commonwealth").

3 |       Respectfully, this Court's order in *Sunnyside I* granting Defendants'

4 | motion to dismiss held Washington to a stricter standard than is supported by

5 | *Snapp* and its progeny. *Sunnyside I*, ECF No. 16 at 10-11 (faulting Washington

6 | because it "[did] not include sufficient allegations that the CFRHP is the cause of

7 | similar problems in other municipalities," "does not seek relief beyond the

8 | context of Sunnyside," and "articulate[d] only three specific instances in which

9 | discriminatory treatment allegedly occurred through enforcement of the CFRHP

10 | in Sunnyside, a municipality with 'over 16,000 residents'"). But neither *Snapp*,

11 | *Koster*, nor any other case cited by any party or the Court requires an allegation

12 | that parties *besides* the defendant have *also* engaged in illegal conduct, or that the

13 | defendant's conduct directly impacted residents beyond those described in the

14 | complaint. *Cf. Koster*, 847 F.3d at 651 (the number of persons directly impacted

15 | by the challenged conduct is not determinative of *parens patriae* standing)

16 | (quoting *Snapp*, 458 U.S. at 607); *11 Cornwell*, 695 F.2d at 39-40; *Support*

17 | *Ministries*, 799 F. Supp. at 277-78; *Bull*, 16 F. Supp. 2d at 100-01; *Pump House*,

18 | 914 F. Supp. at 812-13; and *Mid Hudson*, 877 F. Supp. at 145-48. Neither do

19 | those cases require Washington to seek statewide relief beyond the perpetrators

20 | of the challenged conduct. Rather, Washington has alleged what the *Snapp*-line

21 | of cases requires: conduct that, if left unchecked, will continue and could spread

22 |

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

10

1    to other cities, resulting in more direct harm to residents and, more importantly,

2    indirect injury to state residents who will learn that municipal police face no

3    consequences for depriving residents of their basic rights to due process and equal

4    treatment under the law.

5         Like the numerous other federal courts that have analyzed this issue, this

6    Court should hold that Washington, as *parens patriae*, has standing to maintain

7    its § 1983 and Fair Housing Act claims against Defendants.

8    **C.    Washington's Claims Are Timely**

9         Washington law expressly exempts Washington's claims from the statute

10   of limitations, providing "there shall be no limitation to actions brought in the

11   name or for the benefit of the state." Wash. Rev. Code § 4.16.160; *see also*

12   *Washington v. LG Elecs., Inc.*, 375 P.3d 636, 642 (2016) ("Thus, unless there is

13   an express provision to the contrary, no statute of limitations applies to actions in

14   the name of or for the benefit of the State."). Here, Washington brings its claims

15   to protect the health and well-being of its residents caused by Defendants'

16   unlawful evictions. The very purpose of Washington's *parens patriae* action is

17   to benefit Washingtonians broadly, and not just identifiable individuals. Thus,

18   Washington has brought its claims in the name of or for the benefit of the state,

19   and is exempt from any state statute of limitations.

20        For an action filed under § 1983, the Court looks to the law of the state in

21   which the cause of action arose and applies that state's personal injury suit statute

22

PLAINTIFF STATE OF                         11                ATTORNEY GENERAL OF WASHINGTON
WASHINGTON'S RESPONSE TO                                           Civil Rights Division
DEFENDANTS' MOTION TO                                           800 Fifth Avenue, Suite 2000
DISMISS                                                              Seattle, WA  98104
                                                                     (206) 464-7744

1    of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (the relevant statute of

2    limitations "is that which the State provides for personal-injury torts"). Although

3    the statute of limitations for personal injury actions in Washington is generally

4    three years from the time the cause of action accrues, *see* Wash. Rev. Code

5    § 4.16.080, federal courts apply all applicable exemptions and tolling provisions

6    provided by state law. *Wallace*, 549 U.S. at 394. Wash. Rev. Code § 4.16.160 is

7    such a provision, so no statute of limits applies to Washington's § 1983 claim.

8        Even if the three-year statute of limitations did apply, Washington alleges

9    a continuing violation, and the Complaint includes two examples of Sunnyside

10   police officers unlawfully evicting residents within the claimed limitations

11   period. Compl. ¶¶ 5.24, 5.25. *See Gutowsky v. County of Placer*,

12   108 F.3d 256, 260 (9th Cir. 1997) (applying the "continuing violations" doctrine

13   to § 1983 claim and determining the statute of limitations did not commence until

14   occurrence of the last act constituting the continuing violation) (citation omitted);

15   *see also Victor Valley Family Res. Ctr. v. City of Hesperia*, No. ED-CV-16-

16   00903-AB, 2016 WL 3647340, at *4 (C.D. Cal. July 1, 2016) (concluding the

17   statute of limitations period was not triggered when the city adopted the

18   challenged ordinance, but when the city enforced it).

19       Because the three-year statute of limitations is inapplicable to this law

20   enforcement action brought in the name of the state, and because Washington

21

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

12

alleges a continuing violation with at least one violation falling within the claimed limitations period, Washington's § 1983 claims are timely.

**D.      Washington's Allegations Establish Municipal Liability Against Sunnyside**

For Sunnyside to be liable under § 1983, the city must have deprived residents of their constitutional rights pursuant to a city policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985). Washington's complaint alleges just that.

The policy or custom must be "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (internal citation omitted). Courts recognize constitutional violations where a city ordinance fails to establish sufficient procedural safeguards before depriving residents of their home. *See, e.g.*, *Victor Valley Family Res. Ctr.*, 2016 WL 3647340 at *5 (issuing preliminary injunction where it was unclear whether challenged city housing ordinance provided procedure for tenant to contest the findings under the city's Crime Free Rental Housing Program prior to the initiation of eviction proceedings); *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1059 (S.D. Cal. 2006) (granting temporary restraining order to stop the city from sanctioning landlords for not evicting tenants who are unlawfully in the United

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    States because it "fail[ed] to provide for notice or hearing of any kind prior to the

2    deprivation of an illegal alien's tenancy interest").

3        Here, as in *Victor Valley Family Res. Ctr.* and *Escondido*, Washington has

4    alleged facts sufficient to show that Sunnyside deprived the evicted tenants of

5    their constitutional rights pursuant to a city policy or custom. Sunnyside describes

6    the CFRHP as mandatory citywide. Compl. ¶ 5.2. Sunnyside's policy or practice

7    of enforcing the CFRHP using extrajudicial evictions "has been Sunnyside's

8    official policy for years, has affected numerous residents, and constitutes an

9    ongoing and continuing violation." *Id.* ¶ 5.30. Sunnyside also fails to provide

10   training on the CFRHP to any Sunnyside employees, including its police officers

11   who enforce the ordinance. *Id.* ¶ 5.12. And Washington alleges that Sunnyside

12   Police Chief Escalera, who is responsible for policy development and program

13   implementation for the police department, knowingly or recklessly allowed

14   officers to evict tenants without a court order, hearing, or evidence of criminal

15   activity. *Id.* ¶¶ 5.26, 5.39–5.42.

16       These allegations, taken as true for purposes of this motion, show that

17   Sunnyside has a policy or custom—authorized at the highest levels of the City—

18   to cast out tenants without due process and in complete disregard of their federal

19   and state constitutional and statutory rights. At the pleading stage, Washington

20   has more than sufficiently alleged the lack of due process protections for tenants,

21   inadequate procedures to prevent unlawful evictions, lack of proper training for

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  city employees who enforce the CFRHP, and reckless indifference of city

2  policymakers about the results. This Court should deny Sunnyside's motion to

3  dismiss Washington's causes of action under § 1983.

4  **E.    Washington Has Alleged Facts Establishing a Prima Facie Case of
5        Housing Discrimination Under Federal and State Law**

6  Sunnyside argues that Washington's allegations under the Fair Housing

7  Act (FHA), 42 U.S.C. § 3604(a)-(b), and the Washington Law

8  Against Discrimination (WLAD), Wash. Rev. Code §§ 49.60.030(1), .222, are

9  insufficient to state a claim. Motion at 9-10, 11-12. Sunnyside is incorrect.

10  The FHA, 42 U.S.C. § 3604(a), prohibits conduct that "make[s]

11  unavailable or den[ies] . . . a dwelling to any person because of . . . sex, familial

12  status, or national origin." 42 U.S.C. § 3604(a). The WLAD likewise makes it an

13  unfair practice "[t]o  . . . make unavailable or deny a dwelling, to any person"

14  because of sex, status as a family with children, or national origin. Wash. Rev.

15  Code § 49.60.222(1)(f).

16  Under a disparate impact theory, policies that create "artificial, arbitrary,

17  or unnecessary barriers" to housing for members of a protected class are

18  prohibited. *Texas Dep't. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project,*

19  *Inc.*, 135 S. Ct. 2507, 2522 (2015). The FHA and WLAD both allow

20  discrimination to be established based on a policy's disparate

21  adverse impact, without requiring proof of discriminatory intent.

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    *See, e.g., Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745-46

2    (9th Cir. 1996) (there is "no support for the proposition that . . . intent is required

3    to establish a prima facie case of disparate impact under the FHA"); *Kumar v.*

4    *Gate Gourmet, Inc.*, 325 P.3d 193, 204 (Wash. 2014) ("[T]he WLAD creates a

5    cause of action for disparate impact[.]").

6         To establish a prima facie disparate impact claim, a plaintiff must show

7    "(1) the occurrence of outwardly neutral practices; that (2) result in 'a

8    significantly adverse or disproportionate impact on persons of a particular type

9    produced by the defendant's facially neutral acts or practices.'"

10   *Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props, LLC*, No. C16-922 TSZ, 2017

11   WL 2022462, at *2 (W.D. Wash. May 12, 2017) (quoting *Pfaff*, 88 F.3d at 745),

12   *aff'd*, 743 F. Appx 116 (9th Cir. 2018). These requirements apply to both federal

13   and state claims: Washington courts look to federal interpretations of the FHA's

14   discrimination provisions when interpreting the WLAD's prohibition of housing

15   discrimination. *Tafoya v. State Human Rights Comm'n*, 311 P.3d 70, 76

16   (Wash. Ct. App. 2013).

17        Here, Washington has specifically pled that Sunnyside's unlawful

18   enforcement of the CFRHP disproportionately impacts Sunnyside residents who

19   are Latino/as, families with children, or women, Compl. ¶¶ 5.33-5.38, and that

20   Sunnyside's policies and practices are the proximate cause of the extrajudicial

21   evictions. *Id.* ¶ 5.37. *See Inclusive Cmtys. Project*, 135 S. Ct. at 2523

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  (disparate impact properly alleged where plaintiff "point[s] to a defendant's

2  policy or policies causing th[e] disparity"). By disproportionately affecting

3  particular groups, Defendants' enforcement of the CFRHP imposes different

4  terms, conditions, and privileges in the rental of a dwelling based on protected

5  classes; violates residents' rights to engage in real estate transactions without

6  discrimination; and makes unavailable or denies a dwelling based on protected

7  class.

8      Sunnyside argues that Washington has not identified a policy or practice

9  of the City that makes housing unavailable. *See* Motion at 9-10. This argument

10 makes little sense, because a practice of ousting families without any due process

11 and in violation of state landlord-tenant law, rendering them homeless, is

12 certainly a policy of making housing "unavailable" to affected residents.

13 *See* 42 U.S.C. § 3604(a); Wash. Rev. Code § 49.60.222(1)(f).

14     Finally, to the extent Sunnyside argues that it is not a proper defendant

15 because there is no allegation that it is a landlord, *see* Motion at 10, Sunnyside's

16 argument fails. An aggrieved person may bring a housing discrimination claim

17 against whatever entity used discrimination to make housing unavailable.

18 *See Bank of America Corp.*, 137 S. Ct. at 1303 (suit against mortgage lender);

19 *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 510 (9th Cir. 2016) (suit against

20 city). Sunnyside is a proper defendant because it has caused housing to be

21 unavailable on a discriminatory basis.

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

17

**F.      Washington May Enforce the Residential Landlord Tenant Act**

Sunnyside argues that Washington does not have authority to enforce the state's Residential Landlord Tenant Act (RLTA). Motion at 13. However, the Washington Attorney General may represent Washington "in all cases in which the state is interested." Wash. Rev. Code § 43.10.030(1). The Attorney General has "discretionary authority to act in any court, state or federal, trial or appellate, on 'a matter of public concern' provided that there is a 'cognizable common law or statutory cause of action[.]'" *City of Seattle v. McKenna*, 259 P.3d 1087, 1092 (2011) (citation omitted). Sunnyside's actions of disregarding the RLTA's requirements of notice and process before evicting residents is unquestionably a matter of public concern.[3] To the extent Sunnyside again argues that the City cannot be liable under the RLTA because it is not a landlord, Sunnyside's argument remains misplaced. The RLTA does not limit liability to landlords and tenants; rather, it imposes a duty of good faith on anyone performing or enforcing the duties imposed by the RLTA. Wash. Rev. Code § 59.18.020.

―――――――――――――――

[3] *Washington v. Schwab*, 693 P.2d 108 (Wash. 1985), does not hold otherwise. In *Schwab*, the court simply observed that the RLTA could not be enforced by the Attorney General through the authority conferred on the Attorney General in the Consumer Protection Act. 693 P.2d at 113-14. The *Schwab* court nowhere precluded the Attorney General from enforcing the RLTA pursuant to its separate authority under Wash. Rev. Code § 43.10.030(1) and *McKenna*.

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    In sum, Washington is carrying out its duty to ensure that Washington's

2    residents receive the protections provided by the RLTA. This Court should deny

3    Sunnyside's motion to dismiss Washington's sixth and seventh causes of action.

4
**G.    Washington Does Not Seek Damages for Violations of the Washington**
5    **Constitution**

6    Defendants argue that no damages remedy is available for state

7    constitutional violations. Motion at 10-11. However, Washington seeks

8    declaratory and injunctive relief for Sunnyside's state constitutional violations—

9    not damages. *See* Compl. ¶¶ 9.1-9.5. Courts applying Washington law have

10    power to declare the rights, or to restrain the acts, of all parties involved.

11    Wash. Rev. Code §§ 7.24.010, .190; *see also Reeder v. King County*,

12    358 P.2d 810, 564 (Wash. 1961) ("The Declaratory Judgments Act should be

13    liberally interpreted in order to facilitate its socially desirable objective of

14    providing remedies not previously countenanced by our law."). Since

15    Washington seeks declaratory and injunctive relief to remedy Defendant's

16    repeated violations of the state constitution's guarantee of due process by evicting

17    tenants without any judicial or other process, there is no basis for dismissing this

18    claim.

19
**H.    Remand to State Court is the Only Possible Remedy if This Court**
20    **Lacks Subject Matter Jurisdiction**

21    Where both federal and state court have concurrent jurisdiction,

22

PLAINTIFF STATE OF                            19                    ATTORNEY GENERAL OF WASHINGTON
WASHINGTON'S RESPONSE TO                                                      Civil Rights Division
DEFENDANTS' MOTION TO                                                    800 Fifth Avenue, Suite 2000
DISMISS                                                                       Seattle, WA  98104
                                                                              (206) 464-7744

a plaintiff may choose whether to file the case in state or federal court. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). If the plaintiff files in state court, the defendant can remove to federal court; however, if the federal court lacks subject matter jurisdiction, it *must* remand the case to state court, rather than dismiss it. 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196; *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257-58 (9th Cir. 1997) ("Section 1447(c) is mandatory, not discretionary.") (citation omitted). "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196 (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)). Here, this Court has subject matter jurisdiction because Washington has *parens patriae* standing to maintain its federal claims. However, even if this Court were to again find that it lacks subject matter jurisdiction, the only remedy is to remand this case to state court.

## IV.    CONCLUSION

For the foregoing reasons, Washington respectfully requests that this Court deny Sunnyside's motion to dismiss in its entirety.

PLAINTIFF STATE OF WASHINGTON'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    DATED this 26th day of March, 2020.

2

3    Respectfully Submitted,

4

5    *s/Mitchell A. Riese*
     MITCHELL A. RIESE, WSBA #11947
     NEAL LUNA, WSBA #34085
6    Assistant Attorneys General
     Wing Luke Civil Rights Division
7    Office of the Attorney General
     800 Fifth Avenue, Suite 2000
8    Seattle, WA 98104
     (206) 464-7744
9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

21

1    **<u>CERTIFICATE OF SERVICE</u>**

2         I hereby certify that on March 26, 2020, I electronically filed the foregoing

3    with the Clerk of the Court using the Court's CM/ECF system which will send

4    notification of such filing to the following:

5         Attorney for Defendant City of Sunnyside
     KIRK A. EHLIS
6    SEANN M. MUMFORD
     Menke Jackson Beyer, LLP
7    807 North 39th Avenue
     Yakima, Washington 98902
8    kehlis@mjbe.com
     smumford@mjbe.com
9

10

11        DATED this 26th day of March, 2020.

12
                                   *s/Mitchell A. Riese*
13                                 Mitchell A. Riese

14

15

16

17

18

19

20

21

22

PLAINTIFF STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS

     22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744