1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Jul 22, 2020**

SEAN F. McAVOY, CLERK

3

4

5      UNITED STATES DISTRICT COURT

6      EASTERN DISTRICT OF WASHINGTON

7    STATE OF WASHINGTON,

8                        Plaintiff,

9        v.

10   CITY OF SUNNYSIDE; AL
     ESCALERA, in his official and
11   individual capacities; MELISSA
     RIVAS, in her official and individual
12   capacities; CHRISTOPHER
     SPARKS, in his official and
13   individual capacities; JOEY
     GLOSSEN, in his official and
14   individual capacities; and JAMES
     RIVARD, in his official and
15   individual capacities,

16                        Defendants.

NO:  1:20-CV-3018-RMP

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS

17

18         BEFORE THE COURT is a motion by Defendants City of Sunnyside, et al.

19   (collectively, "Sunnyside"), ECF No. 4, seeking to dismiss Plaintiff State of

20   Washington's ("the State") Complaint based on Fed. R. Civ. P. 12(b)(1), (2), (6),

21   and (7).  Having reviewed the parties' briefing, including the State's sur-reply, the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

remaining record, and the relevant law, and having heard oral argument from the parties, the Court is fully informed.

## BACKGROUND

### *Factual Background*

The following is based on allegations in the State's Complaint, ECF No. 1-1, unless otherwise noted.  Sunnyside established a Crime Free Rental Housing Program ("CFRHP") in 2010, and the State alleges that Sunnyside unlawfully enforces its CFRHP to conduct extra-judicial evictions that disproportionately affect Latinos/as, women, and families with children.  *Id.* at 30; *see also* ECF No. 5 at 15. The State alleges that Sunnyside officials characterize the CFRHP as mandatory.  *Id.*

Washington alleges that in enforcing the CFRHP, "since at least 2015 and continuing through the present," Sunnyside employees have violated due process and the Washington Residential Landlord Tenant Act ("RLTA"), Washington Revised Code ("RCW") chapter 59.18.  ECF No. 1-1 at 34.   The State alleges that Sunnyside has a policy or custom of "issuing unwarranted CFRHP notices, pressuring landlords to evict tenants, failing to provide any meaningful process to appeal a notice, and using extrajudicial evictions . . . ."  *Id.* at 37.  In addition, the State alleges that Sunnyside has a policy or custom of enforcing the CFRHP against residents without evidence that those residents engaged in criminal activity.  *Id.*  The State contends that Sunnyside police reports "often fail to state what crime is alleged to have occurred" in or around the CFRHP housing, how criminal allegations were

resolved, and whether the CFRHP was enforced in instances of criminal allegations. *Id.* With respect to scope, Sunnyside's policy or practice of enforcing the CFRHP using extrajudicial evictions, the State alleges that it "has been Sunnyside's official policy for years, has affected numerous residents, and constitutes an ongoing and continuing violation." *Id.*

Moreover, the State alleges that Sunnyside Police Chief Al Escalera, who the State alleges is responsible for policy development and program implementation for the police department, knowingly or recklessly allowed officers to evict tenants without a court order, hearing, or evidence of criminal activity. ECF No. 1-1 at 38.

The State alleges that Sunnyside's practice of unlawful evictions under the CFRHP disproportionately impacts Latinos, women, and residents with children. ECF No. 1-1 at 37.

The Complaint recites the following eight specific incidents.

First, the State alleges that in February 2015, Defendants Melissa Rivas and James Rivard "required" a landlord to send a couple a three-day notice to vacate a rental property that had been searched by Sunnyside police pursuant to a search warrant. ECF No. 1-1 at 33. The State alleges that although no court eviction proceedings had been initiated, Defendant Rivas visited the property three days after the landlord had served the notice and informed the couple that they had to vacate the property by midnight on the same day, approximately eight hours later. *Id.* The State alleges that Defendant Rivas informed the couple that they must leave

Sunnyside and could not relocate elsewhere in the city. *Id.* at 34. As a result, the State alleges, the couple relocated to another city and was homeless for more than one year, forgoing plans and a down payment they had made to move to a Sunnyside RV park as well as housing options from family members in Sunnyside. *Id.*

Second, the State alleges that, in September 2016, Defendant Rivas ordered a pregnant Latina woman with three children to leave the low-income housing where she had been living for seven months without incident. The State alleges that the eviction followed a "single fight . . . near the home," with "no charges . . . filed against anyone involved in the fight and no eviction proceedings . . . ever initiated . . . ." ECF No. 1-1 at 34. As a result of leaving the low-income housing, the unidentified Latina woman and her children "initially stayed in a hotel, then with the [woman's] brother, and ended up without a permanent home for over a year." *Id.*

Third, the State alleges that in May 2017, Defendants Rivas, Sparks, and Glossen evicted "a Latina mother, a grandmother, and seven children without a judicial eviction order" in May 2017. ECF No. 1-1 at 34. Allegedly, after "the mother repeatedly refused the landlord's sexual advances, the landlord accused the mother and her son of stealing, and called the Sunnyside police to evict the family." *Id.* The State alleges that the Defendant Sunnyside police officers told the family that they had two days to leave the rental premises, and, "fearful of the police's warnings," the family left. The State alleges that the family was unable to live together in one home for "over one and a half years." *Id.*

Fourth, the State alleges that in July 2018, "Defendant Rivas and other unidentified Sunnyside police officers arrived at a Sunnyside residence looking for the resident's adult daughter, who did not live there but was visiting the resident." ECF No. 1-1 at 34−35.  Defendant Rivas allegedly arrested the daughter on a misdemeanor warrant and, the next day, informed the resident of the property for eight years that he could no longer live there.  The landlord allegedly informed the resident that, following the directions of the police, the resident was required to leave the rental property within one month, though no judicial eviction order was issued.  On the one-month deadline, "a Sunnyside police officer" allegedly returned to the property, asking the resident for identification and an explanation for why he remained at residence.  "The father told the officer that his things were already packed in his truck and that there was no need to come and kick him out of the house like a dog, especially when he had lived in that house and paid rent for eight years." *Id.* at 35.  The State does not provide any demographic information for the resident.

Fifth, the State alleges that in November 2015, Defendant Rivas informed the manager of a mobile home park that a married couple with a two-year-old daughter "had to be evicted because there had been too many domestic disturbance calls to the police concerning the residents, and that Rivas would bring the manager the CFRHP violation notice." ECF No. 1-1 at 35.  The State alleges that Officer Rivas informed that mobile home residents directly that, "under the CFRHP, they had to leave their home." *Id.*  "The next day, the manager gave the residents an eviction notice," but

"suggested that the couple ask Defendant Escalera to see if they could stay in their home."  *Id.*  However, the State alleges that Chief Escalera told the couple that Officer Rivas was in charge of the CFRHP and that Escalera could not help.  "Fear that they were being evicted, the wife moved out and slept in her truck for several days."  *Id.* at 36.  With no further action to evict the family, the wife moved back into the residence.  She moved back into the residence only after her husband told her that there had been no further action by the manager or Sunnyside police to evict them.

Sixth, Defendant Rivas allegedly responded to a report of domestic violence at a residence in July 2016, where Rivas reported that he observed the residence arguing but saw no signs of physical injury to either resident.  ECF No. 1-1 at 36. The State alleges: "Although Rivas identified no criminal activity, Rivas issued the landlord a CFRHP warning anyway and stated to the landlord that any further contacts concerning the residents would result in the issuance of a CFRHP citation." *Id.*

Seventh, in July 2016, the State alleges that Officer Rivas directed a landlord to evict a grandmother living in an apartment with her grandchildren "after Rivas found an unattended minor who was the daughter of another resident in the building."  ECF No. 1-1 at 36.  Officer Rivas allegedly told the landlord that "the landlord would be fined $1,000 if the grandmother was not evicted."  *Id*.  The landlord allegedly evicted the grandmother, "who could not find other housing for

her and her grandchildren, requiring some of the grandchildren to live with other relatives. The grandmother sought intervention in the matter from Chief Escalera, and the State alleges that Escalera "promised he would bet back to her with a decision . . . ." However, allegedly, "the grandmother was never notified of any decision[,]" and the "landlord evicted the grandmother, who could not find other housing for her and her grandchildren, requiring some of the grandchildren to live with other relatives." *Id.*

Eighth, the State alleges that in July 2015, Defendant Rivas told a homeowner that the homeowner's houseguest was a prostitute and drug addict, and the guest needed to leave the residence. *See* ECF No. 1-1 at 36. The State alleges, "Rivas told the homeowner that if there were any calls to the police concerning criminal activity at the property, the homeowner would receive a CFRH violation citation." *Id.* at 36–37. In addition, the State alleges that "Sunnyside police . . . went to the residence and told the houseguest that she had to leave." *Id.* at 37.

The State raises seven causes of action in the Complaint: (1) denial of procedural due process, guaranteed by the Fourteenth Amendment, U.S. Const., under color of law, in violation of 42 U.S.C. § 1983; (2) denial of substantive due process, in the form of the right to family integrity, guaranteed by the Fourteenth Amendment, U.S. Const., under color of law, in violation of 42 U.S.C. § 1983; (3) housing discrimination against Latino/as, women, or families with children under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; (4) denial of due process under color

of law under the Washington Constitution, art. I, § 3; (5) violation of Washington's Law Against Discrimination ("WLAD"), Revised Code of Washington ("RCW"), ch. 49.60, by interfering with "residents' rights to engage in real estate transactions without discrimination on the basis of national origin, sex, or status as a family with children" in violation of § 49.60.030(1)(c) and discriminating "in the terms and conditions of a real estate transaction" and making unavailable or denying a dwelling "because of national origin, sex, or status as a family with children," in violation of RCW 49.60.222(1)(b), (f); (6) evicting residents without a judicial eviction proceeding or order in violation of the Washington Residential Landlord-Tenant Act ("RLTA"), RCW § 59.18.290; and (7) evicting residents "who are victims of domestic violence or sexual assault" in violation of the RLTA, RCW 59.18.580(2).  ECF No. 1-1 at 40−43.

The State seeks declaratory and injunctive relief, as well as damages, from Defendants.  ECF No. 1-1 at 44.

### Procedural Background

On December 6, 2019, in a different lawsuit pursued by the State regarding several nearly identical allegations, the Court granted Defendant Sunnyside's motion to dismiss and dismissed the State's Amended Complaint without prejudice on the basis that Washington lacked the *parens patriae* standing necessary to proceed in federal court.  ECF No. 16 in Case No. 1:19-cv-3174-RMP.  The Order denied Defendants' motion to amend the judgment to dismiss the State's Amended

Complaint with prejudice on May 4, 2020.  ECF NO. 24 in Case No. 1:19-cv-3174-RMP.

The State filed the instant lawsuit in Yakima County Superior Court on February 5, 2020, and Defendants removed the case to this Court the next day.  ECF No. 1.  The State's amended allegations, set forth above, expand on the specific incidents and the basis for *parens patriae* standing for the State.  *See* ECF No. 1-1.  Defendants filed the instant Motion to Dismiss on March 5, 2020, and the parties presented oral argument to the Court telephonically on May 11, 2020.  ECF Nos. 4 and 10.

## LEGAL STANDARDS

### *Fed. R. Civ. P. 12(b)(1)*

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A court will dismiss a complaint under Fed. R. Civ. P. 12(b)(1) upon finding that the court lacks jurisdiction over the subject matter of the suit.  Standing is an essential aspect of the constitutional limitation that federal-court jurisdiction extends only to actual cases or controversies.  *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976).

"The party invoking federal jurisdiction bears the burden of establishing standing.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation omitted).  When facing a motion to dismiss under Rule 12(b)(1), a plaintiff "must clearly . . . allege facts demonstrating each element."  *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1547 (2016) (internal quotation omitted).  Courts must presume that they "lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 315 (1991).  However, a court also presumes that the plaintiff's allegations in the complaint are true and construes the complaint in favor of plaintiff.  *See Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009).

### *Fed. R. Civ. P. 12(b)(6)*

When a defendant challenges a complaint's sufficiency under Fed. R. Civ. P. 12(b)(6), the court must determine whether the complaint bears "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In deciding a Rule 12(b)(6) motion to dismiss, as with a Rule 12(b)(1) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, a court need

not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation omitted).

## DISCUSSION

### Standing to Bring Claims under 42 U.S.C. § 1983 and the FHA

Defendants argue that the State lacks standing to bring this suit, and, therefore, this Court must dismiss the action for lack of subject matter jurisdiction. *See* ECF Nos. 4 at 8; 8 at 4−7.  The State asserts *parens patriae* standing to raise its two claims under 42 U.S.C. § 1983 and one FHA claim under the doctrine of *parens patriae* based on alleged direct harm to residents, indirect harm to more residents, and harm to the State's quasi sovereign interests.  *See* ECF No. 5 at 9.

Federal courts have jurisdiction only over "cases" and "controversies."  U.S. Const. Art. III, § 2.  A court must dismiss an action upon finding that it lacks jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  To establish standing to sue under Article III, "a plaintiff must demonstrate 'that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury.'"  *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (quoting *Massachusetts*, 549 U.S. at 517)).  While an injury sufficient for constitutional standing must be concrete and particularized rather than conjectural or hypothetical, "an allegation of future injury may suffice if

the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotations omitted). A plaintiff must demonstrate standing for each claim he seeks to pursue and for each form of relief sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). When a plaintiff "defends against a motion to dismiss at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice[.]'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Standing to bring claims under 42 U.S.C. § 1983 and the FHA raise discrete considerations. Standing to seek injunctive relief under § 1983 must be analyzed separately from standing to seek damages. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (finding that the plaintiff could not allege with any certainty that he would be stopped by the police again and, if stopped, subjected to a chokehold); *see also Thomas v. County of Los Angeles*, 978 F.2d 504, 507−08 (9th Cir. 1992) (finding standing to raise a claim for injunctive relief under § 1983 where plaintiffs had alleged a persistent practice of police misconduct within a small neighborhood that likely was to be applied in the future). Claims under the FHA are subject to a "very liberal standing requirement." *Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999). Plaintiffs pursuing relief under the act need only allege the "Article III minima of injury in fact[.]" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

A state may sue under a theory of *parens patriae* where the state asserts an injury to a "quasi-sovereign" interest. *Alfred L. Snapp & Son, Inc.  v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 601−02 (1982).  The category of quasi-sovereign interests raised by the State here is a state's interest "in the health and well-being—both physical and economic—of its residents in general." *Id.*; *see* ECF No. 5 at 9.

In addition, a state must "articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party." *Snapp*, 458 U.S. at 607; *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) ("Other courts have recognized that *parens patriae* standing is appropriate where an aggrieved party could seek private relief.").

As a preliminary matter, the Court rejects Defendants' invocation of the law of the case doctrine and collateral estoppel to argue that the Court's prior dismissal of the Amended Complaint in Case No. 1:19-cv-3174-RMP for lack of standing precludes the State from asserting standing to pursue its Complaint in this matter. *See* ECF No. 8 at 3−5.  The Court dismissed the State's Amended Complaint in Case No. 1:19-cv-3174-RMP without prejudice and, in denying Defendants' motion to amend that judgment found that the "order of dismissal gave Plaintiff an opportunity to amend its complaint to correct the jurisdictional deficiency."  ECF No. 24 at 2 in Case No. 1:19-cv-3174-RMP.[1]  In addition, the Court did not resolve the previous

---

[1] As the Court reaches the conclusion that Defendants' arguments regarding application of law of the case or collateral estoppel are unpersuasive, the Court

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 13

1  case on its merits, a requirement for collateral estoppel to apply.  *See Reyn's Pasta*

2  *Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (collateral estoppel

3  applies only where the first proceeding resulted in a final judgment on the merits).

4  Therefore, the Court evaluates the Complaint now before it to determine whether it

5  establishes jurisdiction.

6        Defendants further argue that, as in Case No. 1:19-cv-3174-RMP, the State

7  fails to demonstrate that it is more than a nominal party in this action or that the

8  proportion of the State's population that is allegedly harmed by Defendants' conduct

9  extends beyond an identifiable group of individual residents.  The State rebuts that it

10  has sufficiently asserted standing by alleging direct harm to an identified group of

11  residents and where it is reasonable to conclude that allowing the challenged conduct

12  to continue may have broader indirect effects on residents beyond those directly

13  impacted.

14        In the Complaint, Plaintiff alleges an "interest in protecting the health, safety

15  and well-being of its residents, including ensuring that they are not excluded from

16  the rights and privileges provided by the United States and Washington

17  Constitutions and laws."  ECF No. 1-1 at 28.  Plaintiff alleges that over 37 percent of

18  the state's occupied housing units are rental properties, and a significant number of

19  Washington residents live in cities with Crime Free Rental Housing Programs

20

21  denies Plaintiff's request to strike this portion of Defendant's reply brief as moot.
   *See* ECF No. 9 a 3.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 14

1    (CFRHPs)." *Id.*  The State alleges that other cities may be considering

2    implementing CFRHPs.  *See id.*

3        The Court finds that, unlike in the prior lawsuit before this Court, the State has

4    articulated a sufficient basis for standing on the basis of the doctrine of *parens*

5    *patriae*.  In the present Complaint, the State has alleged direct injury to a large group

6    of residents, and the State plausibly argued at oral argument that discovery may

7    uncover additional residents affected by the CFRHP, which Sunnyside considers

8    mandatory.  Moreover, the State argues that a repeated and allegedly discriminatory

9    pattern of conduct involving extrajudicial eviction may affect Washington residents

10   beyond those directly injured in Sunnyside by creating a hostile rental housing

11   environment and establishing a detrimental model for other communities that may

12   implement a CFRHP.  In seeking to ensure the appropriate implementation of the

13   CFRHP, the State unmistakably asserts interests separate from the interests of those

14   directly affected by seeking to protect the health and welfare of Washington

15   residents as a whole and to avoid a strain on public resources posed by increased

16   homelessness, displacement, and family separation.

17       Federal courts have recognized that states have a quasi-sovereign interest in

18   the nondiscriminatory treatment of its citizens.  *See Zimmerman v. GJS Grp., Inc.*,

19   No. 2:17-cv-304-GMN-GWF, 2017 U.S. Dist. LEXIS 168630, at *17 (D. Nev. Oct.

20   11, 2017) (citing *Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir. 1981); *New York by*

21   *Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 146 (S.D.N.Y. 1995));

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 15

*New York v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982) (holding that the state had *parens patriae* standing to sue under 42 U.S.C. § 1985 to address allegedly discriminatory housing practices).  Accepting the Complaint as true, the State has declared its interest in safeguarding the health and wellbeing of a substantial portion of its residents and in rectifying injuries that go beyond the direct injuries of particular private parties. *See Snapp*, 458 U.S. at 607.  In addition, the State seeks injunctive relief that exceeds the scope of relief obtainable by any one of the affected individuals through a private suit.  Therefore, the State has satisfied the minima of injury in fact required for constitutional standing under Article III for the State's federal claims by alleging a "sufficient interest in the outcome" of a justiciable "case or controversy."  *Snapp*, 458 U.S. at 602.

### Section 1983 Claims

#### Statute of Limitations

Defendants contend that the State's claims under 42 U.S.C. § 1983 should be dismissed because the running of the applicable statute of limitations is apparent from the face of the Complaint.  ECF No. 4 at 5−7.  The State maintains that claims in the name of, or for the benefit of, the State are exempt from Washington's statute of limitations.  *See* ECF No. 5 (citing RCW § 4.16.160; *Washington v. LG Elecs, Inc.*, 375 P.3d 636, 642 (2016)). The State further argues that even if the three-year statute of limitations were to apply, Sunnyside's use of unlawful evictions is a continuing violation that Sunnyside employees have been carrying out for years and is ongoing now.  ECF Nos. 1-1 at 37; 5 at 8, 18

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 16

Sunnyside did not respond to the State's assertion that the statute of limitations does not apply to claims by the State, but instead asserts that "discrete discriminatory acts are not actionable if time barred, even if they are related to acts alleged within the limitations period."  ECF No. 8 at 9 (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

However, as argued by the State at oral argument, under *Morgan*, 536 U.S. at 113, the case cited by Sunnyside for its statute of limitations argument, Sunnyside may be liable for all acts that are part of Sunnyside's ongoing extrajudicial eviction policy, even if the acts fall outside the limitations period.  *Morgan*, an employment discrimination case, held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. at 114.  Rather, each discrete discriminatory act "starts a new clock for filing charges alleging that act."  *Id.*  Ultimately, *Morgan* held, in the context of a hostile work environment claim, that a charge is timely if filed within the filing period "of any act that is part of the hostile work environment" because "the entire hostile work environment encompasses a single unlawful employment practice."  *Id.* at 117−18.

State law determines the statute of limitations for section 1983 claims.  *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998).  The parties do not dispute that the applicable Washington statute is RCW § 4.16.080.  *See* ECF Nos. 8 at 9; 5 at 18.  However, RCW § 4.16.160 provides that "except as provided in RCW 4.16.310, there shall be no limitation to actions brought in the name or for the

benefit of the state . . . ."  Therefore, given that the State has brought this action in its own name on behalf of quasi-sovereign interests, and accepting the allegations in the Complaint as true, the three-year statute of limitations would not apply.  *See* RCW § 4.16.310.

Even if the statute of limitations were to apply, Plaintiff has pleaded a continuing violation theory for its section 1983 claims.  *See* ECF No. 1-1 at 40−41. For purposes of satisfying the filing requirements for a section 1983 claim, it suffices for "a policy and practice operated at least in part within the limitations period . . . ."  *Green v. L.A. Cty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989).  In addition to alleging that an ongoing policy or practice resulted in and continues to result in a deprivation of substantive and due process rights for affected residents, the State alleged a particular incident on July 2018.  *See* ECF No. 1-1 at 34−35, 40−41.  Because the alleged conduct began during the limitations period, the Court does not find dismissal appropriate on this basis.

### *Monell*[2] Liability

Defendants further move to dismiss Plaintiff's section 1983 claims by arguing that the discriminatory events alleged by Plaintiff occurred outside of the three-year limitations period before the State filed this suit.  ECF No. 4 at 5.  The State alleges that Defendant Sunnyside deprived residents of their substantive and procedural due process rights pursuant to a city policy or custom.  ECF No. 5 at 2.  Defendants

---

[2] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 18

move for dismissal of Plaintiff's municipal claim under 42 U.S.C. § 1983 on the basis that Plaintiff does not identify a policy or practice sufficient to invoke *Monell* liability for Sunnyside.

Section 1983 does not provide for *respondeat superior* liability. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). However, local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. A plaintiff must plausibly plead the following elements to proceed with a *Monell* claim: "(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." *Torres v. Saba*, Case No. 17-cv-06587-SI, 2019 U.S. Dist. LEXIS 2735 at *21 (N.D. Cal. Jan. 4, 2019) (citing *Plumeau v. School Dist. #40*, 130 F.3d 432, 438 (9th Cir. 1997)); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

A plaintiff's claim may not survive a motion to dismiss merely by alleging that a policy, custom, or practice exists that caused the constitutional violations. *AE ex rel. Hernandez*, 666 F.3d at 636−37. However, a municipal policy "may be

inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citation omitted).  Likewise, a municipality may be held liable under §1983 when an official with final policy-making authority ratified a subordinate's unconstitutional act.  *Gillette v. Delmore*, 979 F.2d 1342, 1346−47 (9th Cir. 1992). Ratification requires a showing of "a conscious, affirmative choice" on the part of the authorized policymaker.  *Id*. at 1347.

Plaintiff's Complaint alleges repeated constitutional violations and ratification of those violations by a decisionmaker, Defendant Escalera.  Therefore, accepting Plaintiff's allegations as true for purposes of this Motion, the Court finds that Plaintiff's section 1983 claims against Defendant Sunnyside are plausible under *Monell* and shall not be dismissed at this time.

### Federal and State Housing Discrimination Claims

Plaintiff argues that the individual Defendants' actions and Defendant Sunnyside's policy and custom with respect to evictions under the CFRHP, violate the federal FHA, 42 U.S.C. § 3604, and the WLAD, Wash. Rev. Code ch. 49.60, and warrant declaratory relief and a permanent injunction.  ECF No. 1-1 at 41−44. Defendants seek dismissal of these claims by arguing that Plaintiff's allegations are insufficiently specific and because Sunnyside is not the landlord, there is no plausible allegation that Sunnyside made housing unavailable to any tenants.  ECF No. 4 at 9−10.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 20

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Discrimination may be established upon either disparate treatment or disparate impact. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008); *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997).

To prevail on a disparate treatment claim, Plaintiff may utilize either of two methodologies. First, a plaintiff may establish a prima facie case, as the first step in the *McDonnell-Douglas*[3] burden shifting framework which has been imported from the Title VII employment discrimination arena, by providing sufficient evidence to support that "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1991). The burden then shifts to defendant to articulate "a legitimate, nondiscriminatory reason for its action." *Gamble*, 104 F.3d at 305. Next, the burden returns to the plaintiff to prove by a preponderance that the defendant's asserted reason is a pretext for discrimination. *Id*. Alternatively, in lieu of the *McDonnell-Douglas* framework, a plaintiff may instead "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated"

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802−04 (1973).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 21

defendant's challenged action(s).  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

1122−23 (9th Cir. 2004).  Claims under the WLAD follow the same protocol.  *See*

*Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 354 (Wash. 2007).

Plaintiff's housing discrimination claims assert that Defendants enforce the

CFRHP in a manner that results in the extrajudicial judicial eviction of Sunnyside

residents who are disproportionately Latino/as, women, or families with children.

*See* ECF No. 5 at 22.  The Court agrees that, accepting Plaintiff's allegations as true,

Plaintiff has alleged a prime facie claim that Defendants have made housing

unavailable on the basis of a protected class.  Therefore, the claims should not be

dismissed at this early stage in the case.

### *Washington Residential Landlord Tenant Act Claims*

Plaintiff raises two claims under the RLTA, for evicting residents without a

judicial eviction proceeding or order in violation of RCW § 59.18.290; and for

evicting residents "who are victims of domestic violence or sexual assault" in

violation of RCW § 59.18.580(2).  ECF No. 1-1 at 43.  Defendants move to dismiss

Plaintiff's RLTA claims by arguing that the State's Attorney General lacks

enforcement authority for violations of the RLTA.

The Court finds inadequate legal support to grant dismissal based on

Defendants' argument.  The case upon which Defendants rely reaches only whether

a Washington Consumer Protection Act action could be based on a violation of

RLTA.  *State v. Schwab*, 103 Wn.2d 542, 558 (1985).  The case does not provide the

definitive holding that would support dismissal, and accepting Plaintiff's factual

allegations with respect to RLTA claims as true, Plaintiff's claims survive scrutiny

under Fed. R. Civ. P. 12(b)(6).

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to

Dismiss, **ECF No. 4**, for Failure to State a Claim, ECF No. 4, is **DENIED**.  The

Court will schedule a telephonic scheduling conference by separate order to establish

a trial schedule with the parties.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order and provide copies to counsel.

**DATED** July 22, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 23