1    ROBERT W. FERGUSON
Attorney General
2    MITCHELL A. RIESE
NEAL LUNA
3    Assistant Attorneys General
Attorney General of Washington
4    Civil Rights Division
800 Fifth Avenue, Suite 2000
5    Seattle, WA 98104
(206) 464-7744
6

7

8

9                **UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
10

11    STATE OF WASHINGTON,                NO. 20-cv-03018-RMP

Plaintiff,                STATE OF
12                                            WASHINGTON'S
v.                          RESPONSE TO
13                                            DEFENDANTS' MOTION
CITY OF SUNNYSIDE, et al.,        FOR SUMMARY
14                                            JUDGMENT
Defendants.
15

16

17

18

19

20

21

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

1

# TABLE OF CONTENTS

2    I.    INTRODUCTION ................................................................. 1

3    II.   ARGUMENT ....................................................................... 1

4        A.  Washington Has Standing to Protect Its Quasi-Sovereign
            Interests ..................................................................... 1

5

6           1.   As *parens patriae*, Washington May Recover Damages for
               Residents Whose Constitutional Rights Were Violated ......... 2

7           2.   Defendants Directly Caused the Extra-Judicial Evictions ..... 3

8           3.   Washington Has Standing Because Defendants' Extrajudicial
               Evictions Risk Broader, Indirect Effects on Housing Rights . 5

9

10          4.   Washington Has Standing To Seek Injunctive Relief Because
               It Seeks To Protect the Public Interest .................................... 6

11          5.   The State Has Standing Because No Individual Could Obtain
               Complete Relief for the Harm To Washington's Interests ..... 8

12

13        B.  Genuine Issues of Material Fact Preclude Summary Judgment
            Dismissing Defendants Rivard,  Glossen, Sparks, and Escalera .. 8

14           1.   James Rivard ................................................................. 8

15           2.   Joey Glossen .................................................................. 9

16           3.   Christopher Sparks ......................................................... 9

17           4.   Sunnyside Police Chief Al Escalera ................................. 10

18        C.  The Individual Defendants Are Not Entitled to Qualified
            Immunity Under Federal or State Law Because They Knowingly

19            and Unreasonably Violated the Constitutional Rights of Tenants
            Through Extrajudicial Evictions ................................................ 11

20

21        D.  The Evidence Establishes Sunnyside's Policy or Custom of
            Forcing Tenants from Their Homes Without Due Process ......... 13

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

E.   Washington Has Presented Substantial Evidence Supporting Its Housing Discrimination Claims, Precluding Summary Judgment ...................................................................... 16

F.   By Usurping the Authority of Landlords to Evict Tenants, Sunnyside Is Liable Under the Residential Landlord Tenant Act (RLTA) ........................................................................ 18

G.   Washington May Seek Injunctive and Declaratory Relief for its Claims under the Washington Constitution ................................ 19

III.   CONCLUSION .................................................................. 20

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982) ...................................................................2, 5, 6

4

*Babcock v. State*,
    116 Wash. 2d 596 (1991) ..................................................................12

5

6

*Borunda v. Richmond*,
    885 F.2d 1384 (9th Cir. 1988) .............................................................2

7

*Bridgeforth v. Bronson*,
    584 F. Supp. 2d 108 (D.D.C. 2008) ...................................................12

8

*Budnick v. Town of Carefree*,
    518 F. 3d 1109 (9th Cir. 2008) ..........................................................17

9

10

*Chew v. Gates*,
    27 F.3d 1432 (9th Cir. 1994) .............................................................16

11

*City of Canton v. Harris*,
    489 U.S. 378 (1989) .....................................................................13, 15

12

13

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..........................................................................7, 8

14

*Clark v. Davis*,
    772 F. App'x. 603 (9th Cir. 2019) .....................................................12

15

16

Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props, LLC,
    743 F. App'x. 116 (9th Cir. 2018) .....................................................17

17

*Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props, LLC*,
    No. C16-922 TSZ, 2017 WL 2022462 (W.D. Wash. May 12, 2017) ......17, 18

18

19

*Fairley v. Luman*,
    281 F.3d 913 (9th Cir. 2002).........................................................13, 16

20

*Flynt Distrib. Co. Inc., v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984)..............................................................7

21

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*Greater New Orleans Fair Hous. v. St. Bernard Parish,*
    641 F. Supp. 2d 563 (E.D. La. 2009) ................................................................ 17

*Greene v. Lindsey,*
    456 U.S. 444 (1982) ............................................................................ 12, 13, 18

*Guffey v. State,*
    103 Wash. 2d 144 (1984) ................................................................................ 12

*Johns v. County of San Diego,*
    114 F.3d 874 (9th Cir. 1997) ............................................................................. 3

*Kumar v. Gate Gourmet, Inc.,*
    180 Wash. 2d 481 (2014) ................................................................................ 16

*Long v. County of Los Angeles,*
    442 F.3d 1178 (9th Cir. 2006) ......................................................................... 15

*Mitchell v. Dupnik*
    75 F.3d 517 (9th Cir. 1996) ............................................................................... 2

*Nevada v. Bank of Am. Corp.,*
    672 F.3d 661 (9th Cir. 2012) ............................................................................. 2

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir. 1992) .................................................................... 13, 15

*Pennsylvania v. Porter,*
    659 F.2d 306 (3d Cir. 1981) ...................................................................... 6, 7, 8

*People by Vacco v. Mid Hudson Med. Grp., P.C.,*
    877 F. Supp. 143 (S.D.N.Y. 1995) .................................................................... 2

*People v. Peter & John's Pump House, Inc.,*
    914 F. Supp. 809 (N.D.N.Y. 1996) ................................................................... 2

*Pfaff v. U.S. Dep't of Hous. & Urban Dev.,*
    88 F.3d 739 (9th Cir. 1996) ....................................................................... 16, 17

*Robins v. Meecham,*
    60 F.3d 1436 (9th Cir. 1995) ........................................................................... 10

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Ross v. Glendale Police Dep't.*,
   No. CV-16-1292-PHX-DJH (DMF), 2017 WL 4856871 (D. Ariz. 2017).......3

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008)...........................................................................11

*Smith v. Wade*,
   461 U.S. 30 (1983) .............................................................................................2

*Texas Dep't. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015). ...................................................................................16, 18

*Thomas v. Cohen*,
   304 F.3d 563 (6th Cir. 2002)..........................................................................12

*Tyler Pipe Indus., Inc. v. State Dep't of Revenue*,
   96 Wash. 2d 785 (1982) ...................................................................................19

*United States v. Raines*,
   189 F. Supp. 121 (M.D. Ga. 1960) ...................................................................6

*United States v. Town of Colorado City*,
   No. 3:12-cv-8123-HRH, 2017 WL 1384353 (D. Ariz. Apr. 18, 2017).........16

*Wellington v. Daniels*,
   717 F.2d 932 (4th Cir. 1983)...........................................................................14

<u>Statutes</u>

42 U.S.C. § 1983.................................................................2, 6, 10, 12, 13, 14, 15

Wash. Rev. Code § 59.18.030(15).......................................................................19

Wash. Rev. Code § 59.18.290 .............................................................................19

Wash. Rev. Code § 59.18.580(2)..........................................................................19

Wash. Rev. Code § 7.24.010 ...............................................................................19

Wash. Rev. Code § 7.24.190 ...............................................................................19

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# I.    INTRODUCTION

Numerous issues of material fact exist concerning the merits of Washington's claims, which Washington has established standing to pursue. Defendants' motion should be denied.[1]

# II.    ARGUMENT

## A.    Washington Has Standing to Protect Its Quasi-Sovereign Interests

A state has *parens patriae* standing  where it alleges direct harm to an identified group of residents, *and* where it is reasonable to conclude that the challenged conduct may have broader, indirect effects on residents beyond those directly impacted. ECF No. 5 at 4, 7-8 (citing cases).

In denying Defendants' Motion to Dismiss, this Court found that "the State has articulated a sufficient basis for standing on the basis of the doctrine of *parens patriae*." ECF No. 14 at 15. The State had "alleged direct injury to a large group of residents," and, "[i]n seeking to ensure the appropriate implementation of the CFRHP, the State unmistakably asserts interests separate from the interests of those directly affected by seeking to protect the health and welfare of Washington residents as a whole" *Id*. Discovery has only further established the factual basis for Washington's standing and entitlement to remedies.

---

[1] Sunnyside has not moved for summary judgment on Plaintiff's second cause of action, ECF No. 1-1 ¶¶ 7.1 – 7.6. Accordingly, it is not a subject of the Defendants' motion.

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### 1.  As *parens patriae*, Washington May Recover Damages for Residents Whose Constitutional Rights Were Violated

Plaintiffs in § 1983 action may recover compensatory damages for all injuries suffered as a result of the constitutional violation. *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988). Punitive damages are also available, even where there has been no injury shown. *Smith v. Wade*, 461 U.S. 30, 55 n.21 (1983). Municipalities can be held liable for compensatory, but not punitive, damages. *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (citation omitted).

Washington, as the *parens patriae* plaintiff in this action, may access the same set of remedies as any other plaintiff, including, if proven, compensatory, and/or punitive damages. *See, e.g.*, *People v. Peter & John's Pump House, Inc.*, 914 F. Supp. 809, 811 (N.D.N.Y. 1996) (State as *parens patriae* sought compensatory and punitive damages); *People by Vacco v. Mid Hudson Med. Grp.*, *P.C.*, 877 F. Supp. 143, 144 (S.D.N.Y. 1995) (State as *parens patriae* brought claims to remedy unlawful disability discrimination and sought compensatory and punitive damages). This is because in *parens patriae* actions, the state is the real party in interest, not the individuals directly harmed. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012); *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) (*parens patriae* standing requires a state to seek redress for its own, quasi-sovereign interests that are separate from the interests of the individuals directly harmed). Washington here, as in the cases cited above, is allowed to seek compensatory

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1   and punitive damages to redress the harm that Defendants' civil rights violations

2   have inflicted on residents, whose health and welfare Washington sues to

3   protect.[2]

4   **2.    Defendants Directly Caused the Extra-Judicial Evictions**

5   Defendants incorrectly assert that to prove its claims, Washington must

6   show a causal link between Defendants' extrajudicial evictions and the CFRHP.

7   Not so. Defendants' evictions would violate residents' rights even if the CFRHP

8   did not exist. Put another way, the existence of the ordinance is a part of the

9   factual background in this case, but it is not an element of any claim or defense.

10  Even if a causal link were required, the evidence shows that Defendants

11  had a policy or custom of evicting residents under the auspices of the CFRHP.

12  Washington submits declarations and police reports evidencing fourteen

13  instances of extrajudicial evictions, without a court order, that directly impacted

14  at least 43 residents. ECF No. 33 ¶¶ 25-32; Decl. of Isabel Villa (Villa Decl.) ¶¶

15

16

17  _____

18  [2] Defendants' two cases are not to the contrary. Neither involves a state's

19  *parens patriae* standing. They address only whether an individual, *pro se* plaintiff

20  may bring constitutional claims on behalf of their minor child. *Ross v. Glendale*

21  *Police Dep't.*, No. CV-16-1292-PHX-DJH (DMF), 2017 WL 4856871 at *3 (D.

22  Ariz. 2017) (quoting *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir.

23  1997)).

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

3

1    3-6, 8-10 (confirming Defendants directed property manager to evict tenants in

2    four separate instances).

3        And Defendant Rivas' own words confirm this practice. Her incident

4    reports describe the actions she took with accompanying officers, including

5    Defendant Glossen, to deny tenants housing without a court order. These actions

6    include (1) requesting that tenants vacate their residences or directing landlords

7    to evict tenants, Statement of Material Disputed Facts (SMDF) No. 26, 28, 31,

8    32, 33, 34, 35; ECF No. 32-4 p. 3; Second Riese Decl. Ex. 5 p. 2; Ex. 6 p. 2, Ex.

9    10; (2) visiting tenants to ensure that they were moving out, and if they were not,

10    forcing them to do so, SMDF No. 34, 35; ECF No. 32-2 p. 3; Second Riese Decl.

11    Ex. 8 p. 2; ECF No. 32-3 p. 3; (3) advising landlords not to rent to certain tenants,

12    Second Riese Decl. Ex. 8 p. 2; Ex. 9 p. 2;  SMDF No. 34, 35; ECF No. 33-3 ¶

13    10; (4) telling tenants that their landlord wanted them to move out and giving

14    them 30 days to do so, SMDF No. 29, 31, 32, 33, 34, 35; ECF No. 32-2 p. 3; ECF

15    No. 32-3 p. 3; and (5) issuing notices of noncompliance with the CFRHP in

16    domestic violence cases, Second Riese Decl. Ex. 7 p. 2; SMDF No. 34, 35.

17        Chief Escalera confirms that, despite not having authority to order

18    evictions, there were incidents "where officers of the Sunnyside Police

19    Department, through their actions, may have given tenants the impression that

20    they are acting in a role of final authority." Second Riese Decl. Ex. 12 p. 2. While

21    Chief Escalera describes those incidents as "isolated," *id.*, Washington has

22    presented evidence of at least fourteen separate extrajudicial evictions that cost

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

4

1    at least thirty Sunnyside residents their housing. Washington's evidence ties

2    Defendants directly to those evictions, and summary judgment should be denied.

### 3.    Washington Has Standing Because Defendants' Extrajudicial Evictions Risk Broader, Indirect Effects on Housing Rights

*Parens patriae* standing does not require Washington to show that police

officers in other Washington cities are conducting extrajudicial evictions. Rather,

Washington has standing because, as this court has already recognized, it is

reasonable to conclude that Defendants' extrajudicial evictions, if left unchecked,

may negatively impact other Washington tenants "by creating a hostile rental

housing environment and establishing a detrimental model for other communities

that may implement a CFRHP." ECF No. 14 at 15; *accord Snapp*, 458 U.S. at

609 (rejecting argument that discrimination by one jurisdiction against a small

percentage of Puerto Rican workers was insufficient for *parens patriae* standing).

And, even though not required for standing, there *is* evidence from the

neighboring city of Othello showing that unlawfully operated CFRHPs can

"spread." In 2014, Sunnyside's Captain Phil Schenck was hired to be the next

Chief of Police in neighboring Othello. Second Riese Decl. Ex. 14, Deposition

of Phil Schenck (Schenck Dep.) at 109:8-15. Chief Schenck had been deeply

involved with Sunnyside's CFRHP and advocated that Othello adopt a similar

program. *Id.* at 24:20 – 31:3. Othello did, and by 2015 and 2016, Othello began

enforcing its own CFRHP in cases where there had been no crime committed by

the tenant or where the tenant was a victim of domestic violence. *See* Declaration

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    of Sarah Smith (Othello domestic violence victim evicted pursuant to CFRHP);

2    Second Riese Decl. Exs. 15, 16, 17, 18 (violation notices issued to domestic

3    violence victims and other tenants who had not been charged with any crime).

4    Simply put, unlawful police practices can be contagious, and Washington has

5    standing to protect its residents from the direct and indirect effects of Sunnyside's

6    extrajudicial eviction scheme.

7    **4.    Washington Has Standing To Seek Injunctive Relief Because It
         Seeks To Protect the Public Interest**

8

9    When, as here, the government sues to protect the public interest, "it is

10   sometimes more certainly entitled to an injunction than a private plaintiff might

11   be." *United States v. Raines*, 189 F. Supp. 121, 134 (M.D. Ga. 1960) (injunction

12   granted where U.S. seeking broad remedial relief under the Civil Rights Act of

13   1957). "Courts of equity frequently go much further in giving and in withholding

14   relief in furtherance of the public interest than they are accustomed to go where

15   only private interests are involved." *Id*. States as *parens patriae* may sue to enjoin

16   conduct by state or local officials that infringe on residents' constitutional rights,

17   including in actions brought under § 1983. *See, e.g., Snapp*, 458 U.S. at 598-99

18   (Puerto Rico as parens patriae sought injunctive relief to require defendants to

19   follow relevant federal statutes and regulations); *Pennsylvania v. Porter*, 659

20   F.2d 306, 310 (3d Cir. 1981) (en banc) (Pennsylvania Attorney General as *parens
     patriae* sued under § 1983 to enjoin police misconduct).Under these principles,

21

22   Washington is entitled to an injunction because it brings this action in the public

                        6          ATTORNEY GENERAL OF WASHINGTON
                                        Civil Rights Division
                                     800 Fifth Avenue, Suite 2000
                                        Seattle, WA  98104
                                          (206) 464-7744

1   interest, as *parens patriae*, to protect the health and well-being of

2   Washingtonians. The declarations Washington has presented show that

3   Defendants' evictions caused many families to become homeless or otherwise

4   lose access to safe and stable housing. ECF No. 33 at 25-27, 29, 31. The risk to

5   the public of future civil rights violations makes this case unlike *City of Los*

6   *Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983), on which Defendants rely, where

7   an *individual* plaintiff sought an injunction to prevent unlawful, future police

8   practices against *him*. *Id*. at 105. It also makes it unlike *Flynt Distrib. Co. Inc., v.*

9   *Harvey*, 734 F.2d 1389, 1395 (9th Cir. 1984), a breach-of-contract case where

10  money damages would provide complete relief.

11          And, of course, Defendants' temporary cessation of CFRHP enforcement

12  does not alter Washington's entitlement to relief. *Lyons*, 461 U.S. at 105. Instead,

13  given that all officers except for Rivard still work for Sunnyside, and in light of

14  Defendants' admission that they may resume CFRHP enforcement as soon as this

15  litigation is over, ECF No. 48 ¶ 49, Washington properly seeks an injunction to

16  prevent the resumption of illegal evictions. *See Porter*, 659 F.2d at 313 (affirming

17  permanent injunction even though offending police officer left the city, because

18  "we cannot say with assurance that there is no reasonable expectation that the

19  alleged violations will recur").

20

21

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

7

### 5.    The State Has Standing Because No Individual Could Obtain Complete Relief for the Harm To Washington's Interests

Washington has standing here even if the individuals directly harmed by Defendants' unlawful acts could have brought their own claims for damages. *See Porter*, 659 F.2d at 315-16. This is because the injunctive relief that is so critical to Washington's interests, including policy changes and mandatory training, would not be available in an individual suit. *See Lyons*, 461 U.S. at 105; *see also* Declaration of Chet Epperson (Epperson Decl.) ¶¶ 12 - 14 (improved training would have prevented violations at issue). Because injunctive relief would not be available in an individual suit, Washington has standing.

### B.    Genuine Issues of Material Fact Preclude Summary Judgment Dismissing Defendants Rivard, Glossen, Sparks, and Escalera

#### 1.    James Rivard

Rivard denies he evicted anyone during his time as code enforcement officer. ECF No. 54 ¶ 5. He acknowledges telling the Francises' landlord that she could be subject to fines if her property was not cleaned up, but he denies telling anyone an eviction was required. *Id.* ¶ 8.

The Francises tell another story. They say that their landlord gave them an eviction notice because Rivard and Rivas threatened fines of about $1000 a month if the Francises were not evicted. ECF No. 33-1 ¶ 3; ECF No. 33-2 ¶ 3. A trial is required to resolve this fact dispute.

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

8

1        **2.     Joey Glossen**

2        Glossen likewise denies ever telling tenants he was evicting them. ECF

3    No. 52 ¶¶ 4-8. However, Sunnyside resident Yesica Santos Nuño testifies that

4    after she rejected her landlord's romantic advances, he accused Santos Nuño and

5    her son of theft and called the police to remove the family from the house. Three

6    Sunnyside officers came to the house and told Santo Nuño that the family had

7    two days to vacate. *Id*. ¶ 5. Santos Nuño and her family complied with the order

8    to vacate, causing the family to be separated. *Id*. ¶¶ 6,7. The related Incident

9    Report confirms that Glossen was present, *see* ECF No. 32-2 at 2-3. Glossen's

10   personal participation cannot be resolved on summary judgment.

11       **3.     Christopher Sparks**

12       Sparks states that he has never told a landlord to evict a tenant nor has he

13   ever told a tenant that they were being evicted. ECF No. 53 ¶ 4. Sparks

14   acknowledges that he was present during the incident where Santos Nuño asserts

15   that Sunnyside officers ordered her to leave her home in two days. *Id*. ¶ 7. While

16   he denies telling Santos Nuño that she had to leave her home, this again presents

17   an issue of material fact unresolvable on summary judgment.

18       There is additional evidence of Sparks' personal involvement in the

19   eviction of other Sunnyside tenants. Isabel Villa, the property manager of Village

20   Park Sunnyside mobile home park since 2007, states that in 2017, Sparks told

21   Villa that she would have to evict one of her tenants. Villa Decl. ¶ 9. Sparks

22   issued a notice of violation to Villa, and Villa complied with an eviction. *Id*.

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1      ### 4.    Sunnyside Police Chief Al Escalera

2          A supervisor can be liable under § 1983 for his personal conduct, as well

3      the conduct of subordinates if the supervisor knew of their conduct and took no

4      action to prevent it. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995)

5      (failure to intervene to stop constitutional violation sufficient for § 1983 liability).

6          Escalera has been Chief of the Sunnyside Police Department since May

7      2014. ECF No. 51 ¶ 2. He is highest-ranking officer in the Department and is

8      responsible for policy development, control, supervision, and program

9      implementation in the Department. Compl., ECF No. 1-1 at 38 ¶ 5.40; Answer,

10     ECF No. 18 at 8 ¶ 5.40. He acknowledges that Rivas was the officer in charge of

11     the CFRHP at the time he was hired. ECF No. 51 ¶¶ 6-7; Escalera Dep. at 38:1 -

12     39:3.

13         Sunnyside residents have provided evidence of Escalera's direct

14     participation in hearing "appeals" from orders to vacate issued by Sunnyside

15     police officers. Yvonne Chagolla states that she was ordered out of her home by

16     Rivas. ECF No. 33-6 ¶¶ 3, 4. Chagolla complained to her property manager, who

17     suggested speaking to Escalera and seeking his permission to stay in her home.

18     Escalera met with Chagolla and heard her story, but responded that there was

19     nothing he could do to help because Rivas was in charge of the CFRHP. *Id*. ¶ 7.

20     For his part, Escalera recalls meeting with Chagolla and her husband, and

21     confirms telling them that he had no authority to intervene. Escalera Dep. at

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

193:25 to 195:2; *but see* SMC 5.02.030 F (police chief can hear appeals of notice of noncompliance).

Hilda Leon likewise relates her attempt to appeal to Escalera. After Rivas told her that she would direct Leon's landlord to evict her, Leon received an eviction notice from the landlord. Leon went to speak with Escalera, and asked him to reconsider Rivas' decision to order her eviction. ECF No. 33-7 ¶¶ 4-6. Escalera said he would look into the situation, but Leon never heard back from him. Leon was subsequently evicted. *Id*. ¶ 7.

Washington has thus presented evidence of Escalera's personal involvement in handling "appeals" of unlawful evictions under the CFRHP, and also in failing to intervene in the unconstitutional police practices of Sunnyside officers. This evidence creates issues of material fact regarding Escalera's liability, and he should not be dismissed as a defendant.

**C.    The Individual Defendants Are Not Entitled to Qualified Immunity Under Federal or State Law Because They Knowingly and Unreasonably Violated the Constitutional Rights of Tenants Through Extrajudicial Evictions**

Defendants do not rebut Washington's arguments that qualified immunity does not apply to municipalities, or to the claims for declaratory or injunctive relief against individual officers. Defendants have abandoned these arguments. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (citation omitted).

In seeking qualified immunity for the individual officers, Defendants re-cast Washington's lawsuit as claiming "a violation of the Fourteenth Amendment

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

11

1    to the United States Constitution for a law enforcement officer to issue notices of

2    violation pursuant to a municipal Crime Free Rental Housing ordinance that was

3    duly enacted pursuant to state law." ECF No. 47 at 13. They know better.

4    Washington's claims allege a policy or custom of uniformed, armed police

5    officers evicting residents from their homes on almost no notice and without a

6    scintilla of due process. Qualified immunity is unavailable for such conduct.

7        Almost forty years ago, the Supreme Court held that extrajudicial evictions

8    performed by law enforcement violate a tenant's Fourteenth Amendment due

9    process rights. *Greene v. Lindsey*, 456 U.S. 444, 456 (1982). This fundamental

10   principle is clearly established law and has been reaffirmed repeatedly. *See, e.g.*,

11   *Clark v. Davis*, 772 F. App'x. 603, 604 (9th Cir. 2019); *Thomas v. Cohen*, 304

12   F.3d 563, 572 (6th Cir. 2002); *Bridgeforth v. Bronson*, 584 F. Supp. 2d 108, 120-

13   21 (D.D.C. 2008). Contrary to Defendants' representation, Washington cited

14   these three cases in its opening brief. ECF No. 31 at 6. Defendants are not

15   immune from liability for Washington's § 1983 claims.

16       Neither can qualified immunity shield the individual Defendants from

17   damages for violating Washington state law. Washington agrees with Defendants

18   that under state law, qualified immunity applies when the police officer "(1)

19   carries out a statutory duty, (2) according to procedures dictated to him by statute

20   and superiors, and (3) acts reasonably." *Guffey v. State*, 103 Wash. 2d 144, 152

21   (1984), *overruled on other grounds*, *Babcock v. State*, 116 Wash. 2d 596 (1991).

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  The individual Defendants here fail prongs (2) and (3). They each admit

2  that their training taught them that it was not their role to evict anyone. ECF No.

3  50 ¶ 5; ECF No. 52 ¶ 4; ECF No. 53 ¶ 3; ECF No. 51 ¶¶ 10-11; ECF No. 54 ¶ 5.

4  Yet, the tenants' and property manager's declarations, Chief Escalera's

5  admission, and Defendants' own words from their incident reports show that they

6  did, *see* SDMF Nos. 9, 14, 31, 32, 33, 35 and 51, and thereby failed to act

7  according to procedures dictated to them by statute or superiors. Defendants'

8  extrajudicial evictions also were unreasonable under decades-old U.S. Supreme

9  Court precedent. *Greene*, 456 U.S. at 456. Qualified immunity is unavailable.

10  **D.  The Evidence Establishes Sunnyside's Policy or Custom of Forcing Tenants from Their Homes Without Due Process**

11

12  The City of Sunnyside is liable under § 1983 because it had a policy or

13  custom of causing its police officers to violate tenants' due process rights. To

14  hold a municipality liable, a § 1983 plaintiff must prove: "(1) that he possessed a

15  constitutional right of which he was deprived; (2) that the municipality had a

16  policy [or custom]; (3) that this policy [or custom] 'amounts to deliberate

17  indifference to the plaintiff's constitutional right;' and (4) that the policy [or

18  custom] is the 'moving force behind the constitutional violation.' " *Oviatt v.*

19  *Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation omitted). Failure to

20  adequately train city employees for the tasks they perform, *City of Canton v.*

21  *Harris*, 489 U.S. 378, 378 (1989), or to implement or modify procedures to

22  prevent constitutional harm, *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002), also

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    may subject a city to § 1983 liability. *See also Wellington v. Daniels*, 717 F.2d

2    932, 936 (4th Cir. 1983) (failure to supervise can gives rise to § 1983 *Monell*

3    liability).

4          For years, Sunnyside had no written policy for police to follow when

5    enforcing the CFRHP. Escalera Dep. at 48:24 – 49:10. The City only began

6    developing a written policy after the AGO notified the City of its investigation in

7    2017. *Id.* at 122:15-19.  In addition, the City's records show that police received

8    a single, half-hour training on the CFRHP in 2011, then nothing until 2019. ECF

9    No. 32-7 at 2. Escalera agrees that proper training on the CFRHP is "critical,"

10   because it carries a high risk of liability for the city and because it has a "strong

11   nexus" to "responsible agency operation" and "officer safety." Escalera Dep.

12   55:9-12, 56:19-22, 60:15-17. Nevertheless, Escalera conceded that when he

13   started in 2014, CFRHP training "was something that certainly needed some

14   review. However, "[i]t just wasn't a priority at that time." *Id.*

15         If the City and SPD had a written policy prior to 2019, officers would have

16   been able to refer to it for guidance when making field decisions. Epperson Decl.

17   at ¶ 11. Mr. Epperson is an expert in police policies and practices and a 38-year

18   police professional. *Id.* at ¶¶ 2 and 4. He explains that a proper training program

19   would have ensured that officers received a comprehensive approach and

20   appreciation on the laws and policies governing rental housing, and could have

21   prevented the violations at issue. *Id.* at ¶¶ 10-14. Sunnyside may be held liable

22   for its failure to adequately train officers who enforced the CFRHP. *Long v.*

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

14

1   *County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (holding a "deficient

2   training program" may be the "basis for municipal liability").

3         Sunnyside also failed to adequately supervise CFRHP enforcement, which

4   is a separate basis for § 1983 liability. Escalera testified that he is responsible for

5   making decisions regarding the CFRHP. Escalera Dep. at 36:16 – 37:1. When he

6   became Chief of Police in 2014, though, Rivas was "in charge" of the CFRHP.

7   *Id*. at 38:1 – 39:3. She would report to commanders and at times would come to

8   Escalera himself. *Id*. Every CFRHP report is entered into an electronic records

9   management system that sends it to a supervisor. *Id*. at 41:23 – 42:3. Escalera did

10  not review CFRHP reports, stating "for the most part, I insulate myself from those

11  things." *Id*. at 51:10 -18. And for her part, Rivas could not recall one instance of

12  a supervisor returning a CFRHP report or notice of violation to her because of a

13  problem with the report or notice. Second Riese Decl. Ex. 1, Deposition of

14  Melissa Rivas (Rivas Dep.) at 89-91. This was despite information in the incident

15  reports that Rivas was enforcing the CFRHP in ways that denied tenants housing

16  without due process. See SDMF Nos. 9, 19, 20, 27.

17        At minimum, there are disputed fact issues regarding whether the City's

18  failure to train and supervise officers enforcing the CFRHP constituted a city

19  policy. *Oviatt*, 954 F.2d at 1477–78 (citing *City of Canton,* 489 U.S. at 390) (city

20  policy found where Sheriff knew some prisoners were missing their

21  arraignments, resulting in unconstitutionally long incarcerations and sheriff

22  failed to institute procedural fixes); *Chew v. Gates*, 27 F.3d 1432, 1445 (9th Cir.

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1994) (city cannot escape liability by delegating decisions to lower level officials who are not ordinarily considered policymakers); *Fairley*, 281 F.3d at 918 (city policy found where police chief knew of unlawful arrests and failed to implement preventative measures).

## E.   Washington Has Presented Substantial Evidence Supporting Its Housing Discrimination Claims, Precluding Summary Judgment

Washington alleges that Sunnyside has violated both the Fair Housing Act and the Washington Law Against Discrimination by discriminating against Sunnyside residents in housing on the basis of national origin, familial status, and sex. Compl. ¶¶ 8.1-8.4; 10.1-10.5. ECF No. 1-1 at 41-43. Washington's evidence shows that Sunnyside's practices have had a strikingly disproportionate impact on Latinos, women, and families with children. Defendants are not entitled to summary judgment on Washington's housing discrimination claims.

Under a disparate impact theory, policies that create "artificial, arbitrary, or unnecessary barriers" to housing for members of a protected class are prohibited. *Texas Dep't. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 540 (2015). Proof of discriminatory intent is not required. *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745-46 (9th Cir. 1996); *Kumar v. Gate Gourmet, Inc.*, 180 Wash. 2d 481, 204 (2014). Municipalities have been found liable for fair housing violations committed by their police departments. *United States v. Town of Colorado City*, No. 3:12-cv-8123-HRH, 2017 WL 1384353, at *1 (D. Ariz. Apr. 18, 2017).

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    To establish a claim for disparate impact discrimination in housing, a

2    plaintiff must show "(1) the occurrence of outwardly neutral practices; that (2)

3    result in 'a significantly adverse or disproportionate impact on persons of a

4    particular type produced by the defendant's facially neutral acts or practices.'"

5    *Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props, LLC*, No. C16-922 TSZ, 2017

6    WL 2022462, at *2 (W.D. Wash. May 12, 2017) (quoting *Pfaff*, 88 F.3d at 745),

7    *aff'd*, 743 F. App'x. 116 (9th Cir. 2018). Statistics are admissible to establish

8    disparate impact. *Budnick v. Town of Carefree*, 518 F. 3d 1109, 1118 (9th Cir.

9    2008).

10    U.S. Census Bureau statistics show that 49% of all Sunnyside residents

11    who identify as Hispanic live in rental housing, as compared to 19% of residents

12    who identify as white alone. Declaration of Jennifer Treppa (Treppa Decl.) ¶ 3.

13    Yet Sunnyside's own records show that 82% of CFRHP enforcement actions by

14    Sunnyside from 2011 to 2019 were taken against Hispanic tenants—meaning

15    Hispanic tenants are overrepresented by 33% in the enforcement rate. *Id*. ¶ 41. A

16    disparity of that level is more than sufficient to make out a prima facie case of

17    disparate impact. *See Greater New Orleans Fair Hous. v. St. Bernard Parish*, 641

18    F. Supp. 2d 563, 567 (E.D. La. 2009) (finding disparate impact properly alleged

19    where challenged practice impacted Blacks at a rate 26.7% higher than whites).

20    Defendants' violations also disproportionately affect families with

21    children, who are more likely than other Sunnyside families to rent their homes.

22    Treppa Decl. ¶ 7 (48% versus 37%). Defendants' practices exacerbate this

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

17

1   disparity, because 35 of the 46 individuals (76%) known to have been subject to

2   Defendants' unlawful practices were members of families with children. *Id.* ¶ 9.

3   And, almost all of these residents—31 out of 35, or 89%, were members of

4   families headed by a single, female caregiver. *Id.*

5       Based on this evidence, Washington has established sufficiently "adverse

6   or disproportionate" impact to make out a prima facie case of discrimination.

7   *Breier-Scheetz Props*, 2017 WL 2022462, at *2. Accordingly, the burden shifts

8   to Sunnyside to "prov[e] that the challenged practice is necessary to achieve one

9   or more substantial, legitimate, nondiscriminatory interests." *Inclusive*

10  *Commtys.*, 576 U.S. at 527. Sunnyside has not—and cannot—show a public

11  interest in a practice of unconstitutional evictions, which by definition are not

12  "legitimate."  *Greene*, 456 U.S. at 456. Defendants' motion for summary

13  judgment on Washington's housing discrimination claims should be denied.

14  **F.    By Usurping the Authority of Landlords to Evict Tenants, Sunnyside Is Liable Under the Residential Landlord Tenant Act (RLTA)**

15

16      Defendants are liable for violating the RLTA because they have

17  commandeered the authority to determine who is evicted. All landlords

18  participating in the CFRHP are required to sign an agreement declaring under

19  penalty of perjury "that I understand my responsibility to serve eviction notice

20  within three (3) business days to the violating tenant(s) if I receive written

21  notification of a violation from the Sunnyside Police Department." Rivas Dep. at

22  56:19 to 59:22; Ex. 5, p. 2.  Landlords are warned that failure to comply could

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   result in the loss of the right to rent property, or in the imposition of criminal

2   penalties. *Id.* at 60:1-10. *Id.* at 60:11-23; Ex. 5 p. 3.

3       This assumption by Sunnyside police of the authority to decide which

4   tenants should be evicted—and when—is the heart of what this case is about.

5   Defendants first grant themselves this power, and then exercise it without regard

6   to the requirements of the RLTA. Having chosen to adopt the authority of the

7   landlord, Sunnyside is responsible for the RLTA violations they caused. *See*

8   Wash. Rev. Code §§ 59.18.290, .580(2). At minimum, Defendants have made

9   themselves "agents" of the landlord for purposes of determining which tenants

10  will be evicted. Sunnyside thus come within the definition of "landlord" under

11  the RLTA. Wash. Rev. Code § 59.18.030(15).

12  **G.  Washington May Seek Injunctive and Declaratory Relief for its Claims under the Washington Constitution**

13      Courts applying Washington law have power to declare the rights, or to

14  restrain the acts, of all parties involved. Wash. Rev. Code §§ 7.24.010, .190.

15  Washington seeks declaratory and injunctive relief to remedy Defendants'

16  repeated violations of the state constitution's guarantee of due process.

17      Defendants correctly recite the elements for injunctive relief. ECF No. 47

18  at 20. *Tyler Pipe Indus., Inc. v. State Dep't of Revenue*, 96 Wash. 2d 785, 792

19  (1982). Washington has presented substantial evidence meeting these elements:

20  1) Washington tenants have a clear right to due process before being evicted; 2)

21  Washington has a well-grounded fear of invasion of those rights: Washington has

22

STATE OF WASHINGTON'S
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    presented numerous reports of extrajudicial evictions, and Sunnyside has

2    explicitly asserted its purported right to order landlords to evict tenants for

3    alleged CFRHP violations; 3) Sunnyside has paused enforcement of the program

4    only because of this lawsuit; therefore, they could resume enforcement of illegal

5    practices at any time. ECF No. 48 ¶ 49; ECF No. 51 ¶ 8. Based on past practices

6    and Defendants' stated future intent, there is substantial evidence that

7    Sunnyside's acts will result in actual and substantial injury to Sunnyside tenants

8    if Defendants are allowed to resume extrajudicial evictions.

9                              **III.    CONCLUSION**

10            For the foregoing reasons, the Court should deny Defendants' motion for

11   summary judgment.

12            DATED this 16th day of February, 2021.

13

14                                    Respectfully Submitted,

15                                    ROBERT W. FERGUSON
                                      Attorney General
16

17                                    */s/Mitchell A. Riese*
                                      MITCHELL A. RIESE, WSBA #11947
18                                    NEAL LUNA, WSBA #34085
                                      Assistant Attorneys General
19                                    Wing Luke Civil Rights Division
                                      Office of the Attorney General
20                                    800 Fifth Avenue, Suite 2000
                                      Seattle, WA 98104
21                                    (206) 464-7744
                                      Mitchell.Riese@atg.wa.gov
22                                    Neal.Luna@atg.wa.gov

STATE OF WASHINGTON'S                    20              ATTORNEY GENERAL OF WASHINGTON
RESPONSE TO DEFENDANTS'                                          Civil Rights Division
                                                               800 Fifth Avenue, Suite 2000
MOTION FOR SUMMARY                                                 Seattle, WA  98104
JUDGMENT                                                             (206) 464-7744

1

**CERTIFICATE OF SERVICE**

2          I hereby certify I electronically filed the foregoing with the Clerk of the

3    Court using the Court's CM/ECF system which will send notification of such

4    filing to the following:

5          KIRK A. EHLIS
           Menke Jackson Beyer, LLP
6          807 North 39th Avenue
           Yakima, Washington 98902
7          kehlis@mjbe.com

8
           Attorney for all Defendants
9

10         DATED this 16th day of February 2021.

11

12                                              /s/Anna Alfonso
                                                Anna Alfonso
13                                              Legal Assistant

14

15

16

17

18

19

20

21

22

STATE OF WASHINGTON'S                 21         ATTORNEY GENERAL OF WASHINGTON
RESPONSE TO DEFENDANTS'                                Civil Rights Division
                                                    800 Fifth Avenue, Suite 2000
MOTION FOR SUMMARY                                       Seattle, WA  98104
JUDGMENT                                                  (206) 464-7744