FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 18, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYSIDE; AL ESCALERA, in his official and individual capacities; MELISSA HEEREN, in her official and individual capacities; CHRISTOPHER SPARKS, in his official and individual capacities; JOEY GLOSSEN, in his official and individual capacities; and JAMES RIVARD, in his official and individual capacities,<br><br>Defendants. | NO:  1:20-CV-3018-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff State of Washington's ("Washington's") Motion for Partial Summary Judgment, ECF No. 31, and Defendants City of Sunnyside, et al.'s (collectively, "Sunnyside's") Motion for Summary Judgment, ECF No. 47.  The Court heard oral argument in this matter by video conference, has

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 1

reviewed the parties' filings related to the motions,[1] the remaining record, the relevant law, and is fully informed.

## BACKGROUND

### *Procedural History*

Washington previously pursued a different lawsuit regarding several nearly identical allegations of constitutional and legal deficiencies in Sunnyside's administration of its Crime Free Rental Housing Program ("CFRHP").  *See* Case No. 1:19-cv-3174-RMP.  On December 6, 2019, the Court granted Defendant Sunnyside's motion to dismiss and dismissed the State's Amended Complaint without prejudice on the basis that Washington lacked the *parens patriae* standing necessary to proceed in federal court.  ECF No. 16 in Case No. 1:19-cv-3174-RMP. On May 4, 2020, the Order denied Sunnyside's motion to amend the judgment to dismiss Washington's Amended Complaint with prejudice.  ECF No. 24 in Case No. 1:19-cv-3174-RMP.

Washington filed the instant lawsuit in Yakima County Superior Court on February 5, 2020, and Sunnyside removed the case to this Court the next day.  ECF No. 1.  Washington's amended allegations expanded on the specific incidents and the basis for *parens patriae* standing for Washington.  *See* ECF No. 1-1. Washington alleges that Sunnyside employs a practice of unlawful evictions through

---

[1] ECF Nos. 31, 32, 33, 47, 48, 49, 55, 56, 61. 62, 63, 66.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 2

the CFRHP that disproportionately impacts Latino/as, women, and residents with children.  ECF No. 1-1 at 37.  Washington brings seven claims against all six Defendants: (1) denial of due process, guaranteed by the Fourteenth Amendment of the United States Constitution, under color of law, in violation of 42 U.S.C. § 1983; (2) denial of substantive due process, in the form of the right to family integrity, guaranteed by the Fourteenth Amendment of the United States Constitution, under color of law, in violation of 42 U.S.C. § 1983; (3) housing discrimination against Latino/as, women, or families with children under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; (4) denial of due process under color of law, guaranteed by the Washington State Constitution, art. I, § 3; (5) violation of Washington's Law Against Discrimination ("WLAD"), Revised Code of Washington ("RCW"), ch. 49.60, by interfering with "residents' rights to engage in real estate transactions without discrimination on the basis of national origin, sex, or status as a family with children" in violation of § 49.60.030(1)(c) and discriminating "in the terms and conditions of a real estate transaction" and making unavailable or denying a dwelling "because of national origin, sex, or status as a family with children," in violation of RCW 49.60.222(1)(b), (f); (6) evicting residents without a judicial eviction proceeding or order in violation of the Washington Residential Landlord-Tenant Act ("RLTA"), RCW § 59.18.290; and (7) evicting residents "who are victims of domestic violence or sexual assault" in violation of the RLTA, RCW

59.18.580(2). ECF No. 1-1 at 26–47. The State seeks declaratory and injunctive relief as well as damages. ECF No. 1-1 at 44.

Sunnyside moved to dismiss Washington's Complaint based on lack of subject matter jurisdiction as well as for failure to state a claim. ECF No. 4. One of the arguments raised by Sunnyside was that Washington did not meet the threshold requirements of Article III standing and the *parens patriae* doctrine by showing that Washington is more than a nominal party or that there is an injury to more than an identifiable group of residents. ECF No. 8 at 6–7. Applying the motion to dismiss standard and accepting all allegations as true, the Court found an adequate basis for *parens patriae* standing in Washington's allegation that it is seeking in its lawsuit to ensure the appropriate implementation of the CFRHP, and, consequently, seeking to protect the health and welfare of Washington residents as a whole and to avoid a strain on public resources posed by increased homelessness, displacement, and family separation. *Id.*

Consequently, the Court denied Sunnyside's Motion to Dismiss and concluded that Washington had sufficiently alleged standing at the pleading stage. ECF No. 14 at 14–15. The Court further found that Washington had argued plausibly that discovery may uncover additional individuals or populations affected by Sunnyside's enforcement of the CFRHP. *Id.* at 15.

Having exchanged discovery, now Sunnyside moves for summary judgment on each of Washington's claims. ECF No. 47. Sunnyside continues to contest

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 4

Washington's standing to bring the federal claims in this action, under section 1983 and the FHA. *Id.* at 3. Washington maintains that the Court's conclusions regarding standing at the Motion to Dismiss stage should be dispositive at the summary judgment stage, and Washington moves for partial summary judgment as to Sunnyside's affirmative defenses. ECF Nos. 31 and 67.

### Factual Context

The State of Washington ("Washington") alleges that the practices of Sunnyside under the CFRHP have resulted in due process violations and violations of the state RLTA since at least 2015. ECF No. 1-1 at 34. The CFRHP is embodied in Chapter 5.02 of the Sunnyside Municipal Code and imposes duties on both landlords and police officers. *See* ECF Nos. 32-10, 33 at 5; 56 at 4. That chapter requires landlords of dwelling units in Sunnyside to secure and maintain a license, the annual fee for which is waived if the landlord agrees to participate in the CFRHP. *See* ECF Nos. 32-10; 69-1; and 70-3 at 4. The failure of a residential landlord to secure and maintain a residential rental housing license carries a potential penalty of up to $1,000. ECF No. 32-10 at 4.

Under the CFRHP, residential landlords are notified of the occurrence of criminal activity at the rental. ECF Nos. 32-10; 33 at 5; 56 at 5. Within five business days of receiving a notice of noncompliance, the CFRHP directs a landlord to issue a notice to the tenant to "comply or quit" the premises and to pursue all remedies against the tenant available to the landlord under state law. *Id.* If a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 5

landlord receives two or more notices of criminal activity, the landlord is required to participate in the CFRHP going forward "unless the owner/licensee can demonstrate to the Police Department that he has made a good faith effort to deter the criminal activity." *Id.* at 3 (excerpt from Sunnyside Police Manual).

According to Defendant Al Escalera, prior to his instatement as Sunnyside's Chief of Police in 2014, Defendant Melissa Heeren (formerly "Rivas")[2], a Sunnyside police officer and now detective, was the sole CFRHP officer. ECF No. 51 at 3. If a call related to a CFRHP issue, other officers would turn the case over to Officer Heeren. *Id.* However, the practice ceased at the latest by 2017 and, by then, "all officers of the police department" shared responsibility for administration of the program. *Id.* at 4. Moreover, Sunnyside has ceased enforcement of the CFRHP pending the outcome of the instant litigation. ECF No. 48 at 11.

As standing is again a threshold matter to determine in this case, this time under a summary judgment standard, the Court focuses on whether plaintiff has set forth by affidavit specific facts to show that it has Article III standing. *See Lujan v. Nat'l Wildlife Fed'n*, 504 U.S. 555, 560–61 (1992) (a plaintiff responding to a summary judgment motion raising standing must set forth by affidavit specific facts to show that it has Article III standing).

---

[2] It is undisputed that the Defendant named in the Complaint as Melissa Rivas has changed her last name to Heeren. *See* ECF No. 68 at 4. Therefore, the caption shall be amended to reflect Ms. Heeren's name change.

As an example of the allegedly unconstitutional and otherwise illegal enforcement of the CFRHP, Washington asserts that it has submitted declarations and police reports "evidencing fourteen instances of extrajudicial evictions, without a court order, that directly impacted at least 43 residents." ECF No. 67 at 9 (citing ECF No. 33 at 8–12 (Washington's Statement of Material Facts in Support of its Motion for Partial Summary Judgment) and ECF No. 62 (Declaration of Isabel Villa, incorporated below)). However, the cited Statement of Material Facts recites only eight instances of allegedly unconstitutional and illegal enforcement of the CFRHP, not fourteen. *See* ECF No. 33 at 8–12. Those incidents include alleged evictions by Sunnyside of: (1) Heather and Rodney Francis "at some point during" 2015, ECF Nos. 33-1 at 2; 33-2 at 2; (2) Yolanda Paniagua Dimas and her children in September 2016; (3) Yesica Santo Nuno, her mother, and her seven children in May 2017; (4) Eliseo Vargas in July 2018; (5) Yvonne Chagolla and her husband and two-year-old daughter in winter 2015; (6) Hilda Leon and her grandchildren in 2014; (7) Angelita Guizar in February 2019; and (8) unnamed tenants residing at 427 Victory Way in Sunnyside in October 2011. The Court analyzes these allegations to determine whether they amount to specific facts that support Article III standing based on the *parens patriae* doctrine, as Washington asserts. *See* ECF No. 8 at 6–7.

## SUMMARY JUDGMENT STANDARD

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits. *See Fair Housing Council of Riverside Cty., Inc. v.*

*Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id*. at 324. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3 (internal quotations omitted).

The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). However, the Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker*

*v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"Evidence may be offered to support or dispute a fact on summary judgment only if it could be presented in an admissible form at trial." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925–26 (9th Cir. 2014) (internal quotation omitted). A party cannot rely on purported evidence that "sets out mere speculation for the critical facts, without a showing of foundation in personal knowledge[ ] for the facts claimed to be at issue." *John M. Floyd & Assocs., Inc. v. Tapco Credit Union*, 550 F. App'x 359, 360 (9th Cir. 2013). Furthermore, conclusory statements are insufficient to defeat summary judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 n.9 (9th Cir. 2011) (en banc), *cert. denied*, 565 U.S. 1200 (2012). A party may rely on relevant, hearsay evidence produced in an affidavit in opposition to summary judgment if the out-of-court declarant could later present the evidence in a form admissible at trial. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial.'") (citations omitted).

///

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 9

# DISCUSSION

## *Parties' Standing Arguments*

Sunnyside maintains that Washington has not presented admissible evidence to establish standing to pursue its federal claims. ECF Nos. 55 at 9; 73 at 10. Sunnyside argues that Washington did not provide evidence of any impact on anyone outside of the City of Sunnyside, and, at most, the briefing and record on summary judgment demonstrates that Washington is attempting to enforce the private rights of a handful of tenants who are, or were, residents of Sunnyside, regardless of whether they were allegedly evicted under the CFRHP.

Washington responds that it has standing because it has set forth evidence of direct harm to an identified group of residents, and it is reasonable to conclude that the alleged extrajudicial evictions under the CFRHP may have broader effects beyond the directly affected individuals. ECF No. 67 at 7. Washington maintains that it has submitted "declarations and police reports evidencing fourteen instances of extrajudicial evictions, without a court order, that directly impacted at least 43 residents." *Id.* at 9. Washington also maintains that there is evidence in the summary judgment record that allegedly unlawfully operated CFRHPs can "spread" to other communities. *Id.* at 11. Specifically, Washington points to the deposition of former Sunnyside Deputy Chief Schenck, who became Chief of Police in nearby Othello, Washington, and who allegedly advocated for adoption of a similar

program there, as evidence that Sunnyside's allegedly unlawful eviction scheme can "spread" to other communities.  *Id.* at 11–12.

Furthermore, Washington asserts that there is no need for Washington to demonstrate that the extrajudicial evictions alleged in the Complaint were caused by or related to the CFRHP because "Defendants' evictions would violate residents' rights even if the CFRHP did not exist."  ECF No. 67 at 9.  Washington maintains that its basis for standing in federal court is that it seeks injunctive relief, including policy changes and mandatory training that would not be available to the affected individuals, even if they were able to bring their own, separate lawsuits for damages. *Id.* at 14 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)); ECF No. 71 (Washington's police expert witness declaration cited for the proposition that improved training would have prevented the alleged violations at issue).

### *Standing to Pursue Plaintiff's Federal Claims*

Article III of the United States Constitution provides that federal courts may resolve only "cases" and "controversies."  U.S. Const. Art. III, § 2.  As part of the case-or-controversy requirement, plaintiffs must establish that they have standing to sue.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997).  The issue of standing may be raised either by motion or *sua sponte* by the Court at any time during litigation or appeal; it cannot be waived.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986).

1      At the summary judgment stage, plaintiff must support the elements of

2   standing "in the same way as any other matter on which the plaintiff bears the

3   burden of proof, *i.e.*, with the manner and degree of evidence required at the

4   successive stages of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

5   (1992); *see also, e.g., Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th

6   Cir. 2012); *People to End Homelessness, Inc. v. Develco Singles Apartments*

7   *Assocs.*, 339 F.3d 1, 8 (1st Cir. 2003) ("As litigation progresses, Article III places an

8   increasingly demanding evidentiary burden on parties that seek to invoke federal

9   jurisdiction. A plaintiff who has standing at the motion to dismiss stage does not

10  automatically have standing at the summary judgment stage."). Therefore, "even

11  though general factual allegations may satisfy standing on a motion to dismiss, at the

12  summary judgment stage, a plaintiff must support each element of standing with

13  'specific facts.'" *City & Cty. of S.F. v. United States Postal Serv.*, No. C 09-1964

14  RS, 2011 U.S. Dist. LEXIS 123424, at *15 (N.D. Cal. Oct. 25, 2011) (quoting

15  *Lujan*, 504 U.S. at 561). Summary judgment is appropriate if the plaintiff fails to

16  raise a triable issue of material fact or establish standing as a matter of law. *See In*

17  *re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747 (9th Cir. 2012).

18      Washington asserts that it has standing to sue on behalf of state residents

19  under a doctrine known as *parens patriae*. A plaintiff claiming standing under this

20  doctrine must meet the three minimum Article III requirements as well as two

21  additional requirements. Standing to sue in federal court requires three elements: (1)

1    "an injury in fact—an invasion of a legally protected interest which is (a) concrete

2    and particularized and (b) actual or imminent not conjectural or hypothetical"; (2) "a

3    causal connection between the injury and the conduct complained of"; and (3) "it

4    must be likely as opposed to merely speculative that the injury will be redressed by a

5    favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotations omitted).  If a

6    plaintiff seeking prospective injunctive relief relies on a past injury for the first

7    element of standing, the plaintiff also must show "a sufficient likelihood that [the

8    plaintiff] will again be wronged in a similar way." *Lyons*, 461 U.S. at 111.

9        The two special requirements of *parens patriae* standing include: first,

10   articulating "an interest apart from the interests of particular private parties, *i.e.*, the

11   State must be more than a nominal party"; and, second, "[t]he State must express a

12   quasi-sovereign interest" that has been violated.  *Alfred L. Snapp & Son, Inc. v.*

13   *Puerto Rico ex rel. Barez ("Snapp")*, 458 U.S. 592, 607 (1982).  "Though the

14   universe of 'quasi-sovereign interests' has never been comprehensively defined, it is

15   understood to encompass both 'the health and well-being — []physical and

16   economic — of its residents in general,' as well as the state's interest in 'not being

17   discriminatorily denied its rightful status within the federal system.'"  *New York v.*

18   *United States DOL*, 477 F. Supp. 3d 1, 7 (S.D.N.Y. 2020) (quoting *Snapp*, 458 U.S.

19   at 607).

20       Washington argues that, after the discovery process, Washington was able to

21   produce declarations and police reports evidencing fourteen instances of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~ 13

extrajudicial evictions without a Court order that directly impacted at least 46 residents. *See* ECF No. 67 at 9. However, as the Court summarized above, the cited material refers to at most eight tenancies that Washington alleges that Sunnyside sought to terminate inappropriately. *See* ECF No. 33 at 8–12. The Court examines the affidavits and exhibits of each incident in detail to determine whether they demonstrate the elements of *parens patriae* standing.

<u>Heather and Rodney Francis</u>

Washington asserts that in February 2015 individual Defendant James Rivard, a Code Enforcement Officer during the relevant period, and Defendant Heeren "required a landlord to send a couple a three-day notice to vacate after their home had been searched by Sunnyside police pursuant to a search warrant." ECF No. 1-1 at 33; *see also* ECF No. 33 at 7. Washington offers the declarations of the referenced couple, Heather and Rodney Francis, who recall receiving an eviction notice from their landlord "at some point during" 2015. ECF Nos. 33-1 at 2; 33-2 at 2. Ms. Francis declared that their "landlord said [the eviction notice] was because Sunnyside Police Officer Melissa and Code Enforcement Officer Jim Rivard had told her she would be fined about $1000 a month if she didn't evict us from the house."[3] ECF No. 33-1 at 2. Mr. Francis declared the same. ECF No. 33-2 at 2.

---

[3] The declaration does not contain "Officer Melissa's" last name. *See* ECF No. 33-1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 14

The Francises further declared that then-Officer Heeren required the landlord to send the couple a three-day notice to vacate and subsequently "came to the home and ordered the couple to leave the property by midnight[,]" when no eviction proceedings had been initiated.  ECF Nos. 1-1 at 33; 33-1 at 2 (Heather Francis declaring that "Officer Melissa" ordered the Francises to vacate the property within eight hours and to "leave her town."); 33-2 at 2 (Rodney Francis declaring the same); and 50 at 2–3.

Defendant Heeren denies instructing the Francises' landlord to evict them, but agrees that the home had been searched pursuant to a warrant.  Defendant Heeren further recounts that she told the landlord "that if the problems at the residence persisted [she] would need to issue [the landlord] a citation pursuant to the [CFRHP]."  ECF No. 50 at 5.  Defendant Heeren denies any role in the eviction notice that the Francises' landlord served on them.  *Id.*

There is no evidence that any notice of violation of the CFRHP was issued with respect to the Francises.

Yolanda Paniagua Dimas

Second, Washington alleges that, in September 2016, Defendant Heeren informed a pregnant Latina with three children that they had to vacate the apartment they were renting within three days after a single fight occurred near the home.  ECF No. 1-1 at 34.  Sunnyside provides a declaration from Defendant Heeren that, at the apartment manager's request, Defendant Heeren trespassed a woman named

Yolanda Paniagua Dimas[4] who was pregnant and had been accused of assaulting someone in an apartment complex parking lot.  ECF No. 50 at 6.  Defendant Heeren recalls that Ms. Paniagua Dimas was not on the lease for the premises and denies that the Sunnyside police evicted Ms. Paniagua Dimas or told her that she had three days to vacate.  *Id.*

Washington asserts that Ms. Paniagua Dimas was injured by Sunnyside by being evicted from low-income housing when she had lived there for seven months without incident.  ECF No. 33 at 7.  Washington relies on a declaration from Ms. Paniagua Dimas to support its assertion, in which Ms. Paniagua Dimas states:

> 3. At the beginning of September 2016 a Sunnyside police officer named Melissa ordered me and my family to move out of the apartment in 3 days. This happened after there was a fight in the parking lot of the building. I got involved in the fight, which was initiated by another person, because someone offended me. No criminal charges were pressed against me or anyone involved in that fight. Nevertheless, Officer Melissa said I had to leave the apartment in 3 days.
>
> 4. I begged Officer Melissa to give me another chance. I told her I was pregnant, that I had no criminal record, and that I had nowhere else to go if I moved out of that place.  But she had made up her mind and said we had to move out.
>
> 5. I spoke to the landlord, Michelle, about this situation, asking her if there was anything we could do to fix this and stay at the apartment. She told me she didn't want to evict us and that she didn't have any problems with me, but that it was Officer Melissa's decision and she couldn't do anything to help me. We were never served with any court

---

[4] Ms. Heeren refers to Yolanda Paniagua, but the record indicates that this individual's name is Yolanda Paniagua Dimas.  ECF No. 33-3.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 16

papers telling us that our landlord wanted to evict us or that a court had ordered that we be evicted.

ECF No. 33-3 at 2.  Ms. Paniagua Dimas recalls that she and her children left the apartment and experienced housing insecurity thereafter.  *Id.* at 3.

There is no evidence that any notice of violation of the CFRHP was issued or that the CFRHP was otherwise invoked with respect to Ms. Paniagua Dimas.

<u>Yesica Santo Nuno</u>

Third, Washington alleges that in May 2017, Sunnyside police, including Defendant Heeren, Defendants Joey Glossen and Christopher Sparks evicted Yesica Santo Nuno, her mother, and her seven children without a judicial eviction order. ECF Nos. 1-1 at 34; 33 at 8.  Ms. Nuno recalls in her declaration that after she refused her landlord's ultimatum to have sexual relations with him or move out, her landlord accused her and her son of theft and called the Sunnyside police to remove her and her family from the house.  ECF No. 33-4 at 2–3.

Ms. Nuno recalls three Sunnyside police officers arriving at the house and telling her that she had two days to leave the house and that she and her family complied.  *Id.* at 3.  However, the officer report filed by Washington and dated April 14, 2017, indicates that Defendant Heeren advised Ms. Nuno that the landlord had asked her to leave "but by law she has thirty days from the 14th to get out since they don't have a contract."  ECF No. 32-2 at 3.  The report further indicates that Defendant Heeren indicated that she would "keep a look out for any rentals for

[Nuno] but [Nuno] needed to try harder because I would return on May 14 to check on the status and see about eviction." ECF No. 32-2 at 3.

There is no evidence that any notice of violation of the CFRHP was issued or that the CFRHP was otherwise invoked with respect to Ms. Nuno.

### Eliseo Vargas

Fourth, Washington alleges that in July 2018 Defendant Heeren and other unidentified Sunnyside police officers went to the rental of Eliseo Vargas to arrest his daughter on a misdemeanor warrant. ECF Nos. 1-1 at 35; 33 at 8–9. Ms. Vargas was visiting her father, and her name was not on the lease. *Id.* By contrast, Mr. Vargas's declaration indicates that his landlord, not the officers, asked him to leave the rental in one month, although Mr. Vargas recalls that his landlord "told [him] that she had to ask [him] to leave because the police told her to." ECF No. 33-5 at 3.

Defendant Heeren declares that she did not instruct Mr. Vargas's landlord to evict him and provides the following narrative of the arrest of his daughter and the connection of the incident to the CFRHP:

> Officers did come to the home looking for his daughter based on a warrant. When we arrived at the residence we were invited in by another occupant of the residence that Mr. Vargas' daughter was arguing with. We found Mr. Vargas' daughter high on drugs and out of control. When we asked her to step outside she ran outside screaming and would not follow instructions. She was eventually detained and taken into custody due to her highly agitated and impaired state. Since she was not a resident of the home Mr. Vargas' daughter was trespassed. Mr. Vargas was cited for maintaining a public nuisance and the owner of the residence received a citation for violation of the Crime Free Rental Housing ordinance.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 18

ECF No. 50 at 8.

Yvonne Chagolla

Fifth, Washington alleges that, in winter 2015, Defendant Heeren directed the manager of a mobile home park to evict tenant Yvonne Chagolla and her husband and two-year-old daughter because there had been too many domestic disturbance calls to the police concerning the family.  ECF No. 33 at 9.  Washington alleges that the property manager issued an eviction notice to Ms. Chagolla the next day.  *Id.* However, in contrast to Washington's assertion, the property manager of the mobile home park, Isabel Villa, declares that she did not pursue any eviction action against Ms. Chagolla and her family.  ECF No. 62 at 3.

Ms. Chagolla describes unsuccessfully seeking assistance from Defendant Chief of Police Al Escalera and sleeping in her vehicle for approximately four nights in an effort to avoid attracting further attention from Defendant Heeren.  ECF No. 33-6 at 4.  Ms. Chagolla confirms in her declaration that the family continues to live at the subject property.  *Id.*

There is no evidence that any notice of violation of the CFRHP was issued or that the CFRHP was otherwise invoked with respect to Ms. Chagolla.

Hilda Leon

Sixth, Washington alleges that in 2014 Defendant Heeren instructed a landlord to evict Hilda Leon, a grandmother living with her grandchildren, after

Defendant Heeren allegedly found an unattended minor.  ECF No. 33 at 10.  Ms. Leon declares that Defendant Heeren contacted Ms. Leon to ask if Ms. Leon knew the girl, who was Ms. Leon's granddaughter but not under her care at the time that she was observed by a neighbor to be playing outside without adult supervision. ECF No. 33-7 at 3.

Ms. Leon declares that Defendant Heeren called her "problematic," and warned that she would speak to the building's owners so that they would "kick [Ms. Leon] out." ECF No. 66 at 2.  Ms. Leon further recalls that she soon received a note from her landlord telling her that she had five days to leave the apartment.  *Id.*  Ms. Leon continues, "I spoke with the building manager, Abigail, to ask her why they were kicking me out of the house.  She told me that the police had threatened to charge the building owner a fine of like one thousand dollars." *Id.*

Defendant Heeren does not recall Ms. Leon but denies ever making any of the statements that Ms. Leon attributes to Defendant Heeren and denies "ever telling any landlord to evict a tenant or risk being fined $1,000.00 as a result of simply finding an unattended minor in an apartment complex."  ECF No. 50 at 10.

There is no evidence that any notice of violation of the CFRHP was issued or that the CFRHP was otherwise invoked with respect to Ms. Leon.

### Angelita Guizar

Seventh, Washington alleges that in February 2019, Sunnyside police came to the rental property where Angelita Guizar was a tenant, living with her three

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 20

daughters, and arrested two of her daughter's friends for stealing beer from a nearby shop. ECF No. 33 at 11.[5] Ms. Guizar recalls that, several weeks prior, she received a "ticket" from Sunnyside for nuisance when her daughter and friends "decided to skip school and spent the day at my house, without me knowing." ECF No. 33-8 at 2.

Ms. Guizar recalls that after her daughter's friends were arrested at her house an unnamed, male Code Enforcement Officer for Sunnyside told her that she would have to move out of the rental property in three days and that he would communicate this imperative to Ms. Guizar's landlord. *Id.* Ms. Guizar remembers that Officer Heeren and other unnamed officers were present for Ms. Guizar's interaction with the Code Enforcement Officer. *Id.* Ms. Guizar and her family moved out of the property. *Id.* at 3.

Defendant Rivard denies telling "anyone, either a tenant or landlord, that [he] was requiring a tenant to be evicted" and denies any involvement in administering or enforcing the CFRHP at any time during his work as a Code Enforcement Officer, from which he has now retired. ECF No. 54 at 4. Defendant Heeren denies issuing any kind of notice to vacate or notice under the CFRHP to Ms. Guizar or communicating to Ms. Guizar's landlord that she might need to be evicted. ECF No. 50 at 11.

---

[5] This incident is not alleged in Washington's Complaint. *See* ECF No. 1-1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~ 21

1    There is no evidence that any notice of violation of the CFRHP was issued or

2  that the CFRHP was otherwise invoked with respect to Ms. Guizar.

3        427 Victory Way

4      Eighth, Washington refers the Court to an officer report by Defendant Heeren

5  that describes making a "verbal" request of the landlord for a property at 427

6  Victory Way in Sunnyside on October 24, 2011, to evict the residents at that

7  address.  ECF Nos. 33 at 11; 32-4 at 2–3.  Washington further filed a letter from

8  Defendant Heeren to the landlord, dated October 15, 2011, formally requesting that

9  the eviction process begin with the residents of the rental property "[d]ue to the

10  criminal activity at the residence."  ECF No. 32-5 at 2.  However, in an email from

11  then-Deputy Chief of Police Phil Schenck to Defendant Heeren on October 25,

12  2011, Deputy Chief Schenck indicated that he had reviewed the alleged incidents at

13  427 Victory Way and did not find any violations and further requested that

14  Defendant Heeren meet with him.  ECF No. 32-6 at 2.

15      Washington has provided no evidence that any further action was taken with

16  respect to this rental property or the reported violation under the CFRHP.

17      *Analysis*

18      The evidence that Washington relies on does not meet the minimum

19  requirements for Article III standing because that evidence either is inadmissible or

20  does not support an injury in fact or a causal connection between the alleged injury

21  and the conduct of which Washington complains: evictions pursuant to the CFRHP.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~ 22

1       Washington relies primarily on the declarations of Sunnyside residents who

2  allegedly were evicted under the CFRHP or otherwise allegedly unlawfully evicted.

3  However, the declarants' statements, in key parts, contain hearsay or double hearsay

4  that would not be admissible at trial.  For instance, Ms. Paniagua Dimas declares

5  that her landlady "told me she didn't want to evict us and that she didn't have any

6  problems with me, but that it was Officer Melissa's decision and she couldn't do

7  anything to help me."  ECF No. 33-3 at 2.  Similarly, Ms. Francis declared that the

8  "landlord said [the eviction notice] was because Sunnyside Police Officer Melissa

9  and Code Enforcement Officer Jim Rivard had told her she would be fined about

10  $1000 a month if she didn't evict us from the house."  ECF No. 33-1 at 2.

11       A party may rely on relevant, hearsay evidence produced in an affidavit in

12  opposition to summary judgment if the out-of-court declarant could later present the

13  evidence in a form admissible at trial.  *See Fonseca v. Sysco Food Servs. of Ariz.,*

14  *Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain

15  hearsay are admissible for summary judgment purposes because they 'could be

16  presented in an admissible form at trial.'") (citations omitted).  However, neither Ms.

17  Panigaua Dimas's statement nor Ms. Francis's statement would be admissible.  Ms.

18  Paniagua Dimas's statement about what the landlady said is hearsay, and Ms.

19  Francis's statement about what the landlady said about what the police said is

20  hearsay and double hearsay.  Neither Ms. Paniagaua Dimas nor Ms. Francis could

21  take the stand at trial and offer the statements upon which Washington relies,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~ 23

because there are not hearsay exceptions that would make the landladies' alleged statements admissible.

Moreover, the double hearsay statements by tenants or former tenants about what a landlord or property manager allegedly said to the tenant about what a Sunnyside officer allegedly said to the landlord or manager, even if fully credited and somehow admissible, do not show a pattern of evictions influenced by the CFRHP.  Out of the eight examples of alleged unconstitutional and illegal enforcement of the CFRHP, *see* ECF No. 33 at 8–12, only two feature evidence that CFRHP violations were issued at all: Mr. Vargas and the 427 Victory Way incident. Mr. Vargas's landlord received a notice of violation under the CFRHP.  *See* ECF No. 33-5 at 3; 50 at 8.  And, although Defendant Heeren issued a notice of violation under the CFRHP for the 427 Victory Way property in October 2011, there is no indication that any tenants were required to leave the property after Defendant Heeren's supervisor reviewed the violation and disagreed with her determination. ECF Nos. 32-5; 32-6.

In addition, only two of the instances refer to evictions, the Francises and Ms. Leon, who were evicted by their landlords, but without admissible evidence that the evictions were the result of enforcement of the CFRHP.  ECF Nos. 33-1 at 2; 66 at 2; *see also Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141, 1149 (2002) (noting the dictionary definition of "evict" is to "'expel . . . by legal process; put out'; '[t]o force out; eject; dispossess'; '[t]o recover (property, for example) by a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 24

superior claim or legal process.'") (quoting American Heritage Dict. (new college ed. 1981 pp. 454–55)).  One of the alleged instances featured an ongoing tenancy, Ms. Chagolla, who decided to leave the property for approximately four nights and then continued her tenancy.  ECF No. 33-6.

The Court finds ambiguity as to whether the circumstances in the remaining instances relied on by Washington amounted to evictions at all.  The evidence indicates that the tenants may have elected to vacate the premises voluntarily, regardless of whether they left due to fear or misunderstanding, or that the landlords may have given notices to terminate a month-to-month lease, rather than actual evictions.  *See* ECF No. 33-3 (Ms. Paniagua Dimas; 33-5 (Mr. Vargas); 33-2 (Ms. Nuno); 33-8 (Ms. Guizar).

Likewise, in the declaration submitted by Washington from property manager Ms. Villla, Ms. Villa describes only one instance of serving an eviction notice on a tenant after Defendant Sparks informed her that the tenant had threatened someone and was involved in an assault on another resident of the mobile home park and issued Ms. Villa a notice of violation of the CFRHP.  *Id.* at 3.  Ms. Villa also describes three instances of being told by Defendant Heeren to evict tenants and deciding on her own not to pursue eviction, without any reference to further direction from Sunnyside.  *Id.*

As the instances relied on by Washington do not illustrate a decipherable pattern of enforcing the CFRHP that would be harmful if it were to spread to other

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 25

municipalities in Washington, the Court does not find any concrete or particularized

injury from this record.  Washington has submitted evidence of isolated incidents,

some with an alleged injury and some without.  Whether or not any individual tenant

may have or have had, prior to the running of a statute of limitations, a viable section

1983 or FHA claim against any Defendant, Washington has not produced evidence

that Washington has suffered or is likely to suffer a concrete and particularized

injury that is fairly traceable to Defendants based on the incidents at issue in this

case.  At most, the alleged wrongful activity by Sunnyside affected the individual

declarants and their families, not the State.

In addition, Washington posits that it meets the two special elements of

*parens patriae* standing by seeking to ensure the appropriate implementation of the

CFRHP on behalf of the health and welfare of Washington residents as a whole and

to avoid a strain on public resources posed by increased homelessness, displacement,

and family separation.  However, Washington's argument that it need not show that

the extrajudicial evictions alleged in the Complaint were caused or related to the

CFRHP, because "Defendants' evictions would violate residents' rights even if the

CFRHP did not exist," severs the logic of Washington's own *parens patriae*

standing argument.  ECF No. 67 at 9.  If there is no demonstrable relationship

between the alleged violations and Sunnyside's implementation of the CFRHP, there

is no basis for the Court to find that Washington has an interest apart from the

interests of particular private parties or a quasi-sovereign interest that has been violated.  *See Snapp*, 458 U.S. at 607.

Washington may be correct that the existence of the CFRHP is not an element of any claim or defense, but Washington's standing to pursue the claims raised by the Complaint is based on a causal relationship between the CFRHP and those claims.  *See* ECF No. 67 at 9 ("Put another way, the existence of the ordinance is a part of the factual background in this case, but it is not an element of any claim or defense.").  Without a pattern of conduct related to CFRHP, there is no potential "spread" of that pattern, as Washington argues with respect to allegedly "unlawful police practices" being contagious and possibly spreading to Othello, and no injury to Washington's quasi-sovereign interest in protecting the health and wellbeing of its residents in general.  *See* ECF No. 67 at 12; *see Snapp*, 458 U.S. at 607.

A state seeking to proceed on *parens patriae* standing must show an interest separate from the interests of an identifiable group of individual residents.  *Mo. Ex rel. Koster ("Koster") v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) (citing *Snapp*, 458 U.S. at 607).  In addition, a court must consider indirect implications of the challenged activity to determine whether the alleged injury adversely affects a sufficiently substantial segment of the State's population.  *Id.*  Here, Washington fails to show that the alleged actions raise issues of statewide magnitude or even affected more than ten households in Sunnyside.  Without a sufficient showing by

Washington that it has standing, Washington may not prosecute the claims in this case. *See Lujan*, 504 U.S. at 561.

Although the Court previously considered the issue of standing in resolving a motion to dismiss, Sunnyside's present challenge to Washington's standing is through a summary judgment motion. Washington's current attempt to establish standing is the first opportunity for the Court to evaluate the issue after discovery has been conducted. As discussed, Washington has failed to submit evidence to support that it has standing. Accordingly, the Court grants Defendants' motion for summary judgment on the basis of lack of standing to pursue the section 1983 and FHA claims. Having found that Plaintiff lacks standing to pursue the federal claims in this case, the Court finds that considerations of judicial economy, fairness, and comity favor declining to exercise supplemental jurisdiction over the remaining state-law claims. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment, **ECF No. 47**, is **GRANTED** regarding Plaintiff's section 1983 and FHA claims for lack of standing.

2. The Court declines to exercise supplemental jurisdiction, and Plaintiff's remaining state law claims are **DISMISSED**.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 28

3.  Plaintiff's Motion for Partial Summary Judgment, **ECF No. 31**, is

    **DENIED AS MOOT**.

4.  All upcoming hearings and deadlines in this matter are **vacated**, and all

    other pending motions, if any, are **denied as moot**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order, provide copies to counsel, and **close the file** in this case.

**DATED** May 18, 2021.


            _s/ Rosanna Malouf Peterson_
            ROSANNA MALOUF PETERSON
            United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~ 29